# EXHIBIT K

# LEASE

THIS LEASE (this "Lease"), made this 1st day of June, 2002 (the "Effective Date"), between **DETREX CORPORATION**, a Michigan corporation, the address of which is 24901 Northwestern Highway, Southfield, Michigan 48075 ("Landlord"), and **PARTS CLEANING TECHNOLOGIES OF NORTH CAROLINA, INC.**, a Michigan corporation, the address of which is 24482 Redwing Drive, Novi, Michigan 48374 ("Tenant") referred to herein individually as a "Party" and collectively as the "Parties".

It is mutually covenanted and agreed by the parties hereto as follows:

## EXHIBITS, DEMISED PREMISES:

1. (a) Landlord, in consideration of the rents to be paid and the covenants and agreements to be performed by Tenant, does hereby demise and lease unto Tenant certain land situated in Charlotte, North Carolina, together with all buildings (the "Buildings") and improvements now or hereafter located thereon or therein, which land, buildings and improvements are commonly known as 3114 Cullman Avenue, all appurtenances and rights-of-way incident thereto, and all right, title and interest of Landlord in and to any land lying in the bed of any street, road or highway (open or proposed) to the center line thereof, in front of or adjoining such land and together with any strips and gores relating to such land (all of the foregoing are hereinafter collectively referred to as the "demised premises").

(b) Tenant accepts the demised premises in its "as is" "where is" condition as of the Effective Date, with all faults and defects, latent or patent. Tenant acknowledges and agrees that Tenant is not relying upon any, and neither Landlord nor any of its agents, employees or representatives have made any, representation or warranty regarding the condition of the demised premises.

(c) Landlord and Tenant have entered into this Lease pursuant to an Asset Purchase Agreement of even date herewith executed by the Parties (the "Tenant Asset Purchase Agreement"). Landlord and Solvent Distributors of North Carolina, Inc. have entered into a Service Agreement of even date herewith pursuant to which Solvent Distributors of North Carolina, Inc. will provide certain services with respect to the Part B Permit Operation (as defined in Paragraph 4(b) of this Lease) (the "Existing Demised Premises Service Agreement").

## TERM:

2. The term of this Lease (the "Term") shall commence upon the Effective Date and end one year from the Effective Date, with automatic annual renewal according to the terms contained herein. Either Landlord or Tenant may terminate this Lease upon providing the other party at least six months prior notice. The right of termination provided in this Paragraph 2 shall be in addition to and not in limitation of any other right to terminate this Lease afforded a party under another paragraph of this Lease.

3168563v1
07354/089974

1

## BASIC RENT:

3.  (a) During the Term, Tenant shall pay to Landlord, in lawful money of the United States, monthly installments of base rent in the amount of $2,000.00 each. Such monthly installments of base rent shall be paid in advance on the first day of each and every month during the Term, except that the monthly installment of base rent for the month in which the Effective Date occurs shall be paid on the Effective Date. If the Effective Date is not the first day of a month or the Term expires on a day other than the last day of a month, the base rent payable under this Lease for any such month shall be appropriately prorated.

(b) All payments of rent or other sums to be paid to Landlord shall be made at such place as Landlord shall designate in writing from time to time, without demand and without setoff or deduction for any reason whatsoever except as otherwise expressly provided in this Lease.

(c) It is the intention of the parties that the base rent payable hereunder shall be net to Landlord, so that this Lease shall yield to Landlord the net base rent specified herein during the Term, and that, except as otherwise provided in this Lease, all costs, expenses and obligations of every kind and nature whatsoever relating to the demised premises shall be paid by Tenant.

(d) For purposes of this Lease, "rent" shall mean all base rent, additional rent and other sums payable by Tenant to Landlord under this Lease.

## USE:

4.  (a) During the Term, the demised premises may be used and occupied solely for warehousing and distribution of solvents and parts cleaning products, providing parts cleaning services, and storing and transporting Hazardous Substances and other substances in accordance with the Department of Transportation ten day transfer permit and all other applicable permits and laws, and for no other purpose or purposes without the prior written consent of Landlord.

(b) Notwithstanding anything to the contrary contained in this Lease, Landlord, through its agents, contractors and/or employees, shall have the right during the Term to continue to treat and/or store Hazardous Substances (as defined in Paragraph 7(b) hereof) on the demised premises pursuant to the Resource Conservation and Recovery Act Part B Permit (the "Part B Permit") issued in Landlord's name with respect to the demised premises and to conduct such activities and take such other action as may be necessary or appropriate to close such treatment and storage operation in accordance with all applicable laws and the requirements of all applicable governmental authorities, including all required post-closure activities and actions (the treatment and/or storage of such Hazardous Substances and all such other activities and actions are collectively referred to herein as the "Part B Permit Operation"). In connection with the Part B Permit Operation, Landlord shall have the exclusive right to use that portion of the demised premises which presently is devoted solely to the Part B Permit Operation (the "Part

3168563v1
07354/089974

2

Case 3:21-cv-00458-KDB-DSC   Document 1378-12   Filed 03/21/22   Page 3 of 20

B Permit Space"). In addition, Landlord shall have the right in common with Tenant to use other portions of the demised premises reasonably necessary to permit Landlord to conduct the Part B Permit Operation, including but not limited to drives, parking areas, sidewalks, loading docks, restrooms, and, if applicable, other portions of the Buildings necessary to gain access to the Part B Permit Space. Tenant shall not damage, alter or move any equipment, supplies or other items or materials used or placed on the demised premises in connection with the Part B Permit Operation or otherwise interfere with Landlord's conduct of the Part B Permit Operation. Landlord shall conduct the Part B Permit Operation in compliance with all applicable laws; provided, however, that Landlord shall not be deemed to have breached such covenant if a violation of any such law is caused by any act or omission of any Part B Permit Service Provider (as defined below) or any of their respective agents, contractors, employees or invitees, including but not limited to the failure of the Part B Permit Service Provider to perform or observe any covenant or obligation under any Demised Premises Service Agreement (as defined below).

(c) A "Demised Premises Service Agreement" shall mean the Existing Demised Premises Services Agreement or any other agreement between Landlord and a Part B Permit Service Provider which provides for the Part B Permit Service Provider to provide certain services with respect to the Part B Permit Operation. A "Part B Permit Service Provider" means Solvent Distributors of North Carolina, Inc., Tenant or any other entity or person controlling, controlled by or under common control with or otherwise affiliated with Solvent Distributors of North Carolina, Inc. or Tenant.

(d) Tenant shall procure, at its sole expense, any permits, zoning approvals, licenses, certificate of occupancy or other governmental approvals or authorizations required for the occupancy of the demised premises or the transaction of business and the operation of any equipment in the demised premises.

## ASSIGNMENT AND SUBLETTING:

5. (a) Tenant may not assign, transfer, mortgage or encumber this Lease or sublease (in whole or in part or parts) or permit any other person or entity to use or occupy the demised premises without Landlord's consent. Any assignment, transfer, mortgage or encumbering of this Lease or subletting which does not comply with the provisions of this Paragraph 5 shall be void at the option of the Landlord. Consent by Landlord to one or more assignments, transfers, mortgages, encumbrances or sublettings shall not operate as a waiver of Landlord's right to approve any subsequent assignment, transfer, mortgage, encumbrance or subletting. Tenant shall remain liable for the performance and observance of all of the obligations and covenants of Tenant under this Lease, notwithstanding any such assignment, transfer, mortgage, encumbrance or subletting, whether or not consented to by Landlord.

(b) In the event Tenant desires to sublet all or a portion of the demised premises or assign this Lease, Tenant shall give written notice to Landlord setting forth all of the terms of the proposed subletting or assignment. Landlord shall have the right, exercisable by written notice to Tenant within twenty (20) days after receipt of Tenant's notice: (i) to consent or refuse to consent thereto, and if Landlord fails to notify Tenant, it shall be deemed to have refused consent thereto; or (ii) to terminate the Lease in its entirety in the case of a proposed

3168563v1
07354/089974

3

assignment, or terminate the Lease as to the portion of the demised premises proposed to be sublet, as of the date the proposed assignment or subletting is to be effective. If Landlord terminates this Lease as to any portion of the demised premises pursuant to the immediately preceding sentence, then this Lease shall cease as to such portion of the demised premises and Tenant shall pay to Landlord all rent and other sums accrued hereunder through the termination date relating to the portion of the demised premises covered by the proposed assignment or subletting.

(c) In the event Tenant sublets all or a portion of the demised premises, Tenant shall pay to Landlord, as the same are received, the excess of all rent and other economic consideration received by Tenant as a result of such subletting, less the costs reasonably incurred by Tenant with unaffiliated parties in connection with such subletting (i.e., brokerage commissions, tenant finish work, legal fees and the like), over the rent allocable to the portion of the demised premises so subleased.

(d) In the event of the transfer and assignment by Landlord of its interest in this Lease and the demised premises to a person expressly assuming Landlord's obligations under this Lease, Landlord shall thereupon be released from any further obligations hereunder, and Tenant agrees to look solely to such successor in interest of Landlord for performance of such obligations, except for obligations of Landlord which accrued prior to such transfer and assignment, for which Landlord shall remain responsible.

## RIGHT TO MORTGAGE; RIGHT OF FIRST REFUSAL:

6. (a) Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any mortgage, deed of trust, deed to secure debt or other security instrument now or hereafter encumbering Landlord's interest in the demised premises (referred to herein as a "mortgage", and the holder of any such mortgage is referred to herein as a "mortgagee"). Tenant covenants and agrees to execute and deliver upon demand such further instrument or instruments subordinating this Lease to the lien of any such mortgage or mortgages provided for herein as shall be desired by the holder of such mortgage.

(b) If Landlord is presented at any time during the term of the Lease with a bona fide written offer or agreement (the "Offer") for the sale and purchase of the demised premises which Landlord has determined to accept, Landlord shall deliver to Tenant (i) written notice of receipt of the Offer and the desire of Landlord to accept the same and (ii) a copy of the Offer. Tenant may then elect to purchase the demised premises upon all of the terms and conditions of the Offer by giving written notice thereof to Landlord within thirty (30) days after Tenant's receipt of such notice from Landlord. In the event a closing on the sale of the demised premises to Tenant pursuant to this Paragraph 6(b) occurs, Landlord shall, at the closing and without any additional consideration from Tenant, (i) transfer to Tenant title to all related Part B Permit assets as listed on Schedule 1.2 of the Tenant Asset Purchase Agreement in their then "as-is, where is" condition with all faults and defects, latent or patent, without any warranty or representation regarding the condition of such assets, and (ii) assign to Tenant Landlord's interest in the Part B Permit, to the extent the same is in full force and effect and is assignable. The rights set forth in this subparagraph (b) are personal to Tenant and may not be assigned or

4

3168563v1
07354/089974

transferred to any other party in any manner whatsoever; in the event of any assignment of this Lease or subletting of all or any part of the demised premises, such option shall be null and void and of no further force or effect. Any notice by Tenant of the exercise of its rights under this subparagraph (b) shall be effective only if, as of the date of such notice, Tenant shall not be in default under this Lease and the Lease is in full force and effect. If Tenant fails to exercise its right to purchase the demised premises pursuant to this subparagraph (b), or such exercise is deemed ineffective as described above, Landlord shall thereafter have the right to sell the demised premises, free and clear of any rights of Tenant under this subparagraph (b), and all rights of Tenant under this subparagraph (b) shall terminate and be extinguished and this subparagraph (b) shall be of no further force or effect. In addition, Tenant's rights under this subparagraph (b) shall not apply to a mortgage foreclosure or deed-in-lieu of foreclosure or any sale of the demised premises occurring subsequent to a mortgage foreclosure or deed-in-lieu thereof.

## COMPLIANCE WITH LAWS:

7. (a) Tenant shall promptly comply with all laws, ordinances, lawful orders and regulations and private covenants, restrictions and easements affecting the demised premises, and the cleanliness, safety, occupation, condition or use of same (collectively, "Legal Requirements"). Tenant shall also observe and comply with all requirements imposed by any and all policies of public liability, fire and other insurance at any time in force with respect to the demised premises or any improvements, fixtures or equipment therein. Notwithstanding the foregoing, if compliance with any Legal Requirements or the requirements of any insurers will require structural changes or improvements to the demised premises, the necessity of which does not arise out of (i) Tenant's particular use of the demised premises, (ii) alterations or improvements made by Tenant, (iii) the negligence or willful misconduct of Tenant or any Part B Permit Service Provider or any of their respective agents, contractors, employees or invitees, or (iv) the failure of Tenant or any Part B Permit Service Provider to perform or observe any of its covenants or obligations under this Lease or any Demised Premises Service Agreement, Landlord shall, at its cost, make such changes or improvements. If the cost of any change or improvement to the demised premises which Landlord is required to make pursuant to the immediately preceding sentence will exceed $50,000, Landlord may, in lieu of making such change or improvement, terminate this Lease by giving Tenant written notice thereof ("Landlord's Termination Notice") within 30 days after Landlord becomes aware that such change or improvement is required, and if such Notice is given within such 30 day period, this Lease shall terminate upon the 180th day following such Notice; provided, however, that such termination shall not be effective and this Lease shall remain in full force and effect if Tenant notifies Landlord in writing within 30 days after Tenant's receipt of Landlord's Termination Notice that Tenant will make such change or improvement at Tenant's cost and if Tenant gives such notice, Tenant shall be obligated under this Lease to make such change or improvement at its cost. If the necessity of any structural change or improvement to the demised premises arises out of Tenant's particular use of demised premises and the cost of such change or improvement will exceed $50,000, Tenant may, in lieu of making such change or improvement, terminate this Lease by giving Landlord written notice thereof ("Tenant's Termination Notice") within 30 days after Tenant becomes aware that such change or improvement is required and if such Notice is given within such 30 day period, this Lease shall terminate upon the 180th day following such

Notice; provided, however, that such termination shall not be effective and this Lease shall remain in full force and effect if Landlord notifies Tenant in writing within 30 days after Landlord's receipt of Tenant's Termination Notice that Landlord will make such change or improvement at Landlord's cost and if Landlord gives such notice, Landlord shall be obligated under this Lease to make such change or improvement at its cost.

(b) Tenant shall not use, treat, store, dispose of, introduce, discharge, spill, bury or release any Hazardous Substance at the demised premises except for those Hazardous Substances, and in quantities which (i) would typically and reasonably be expected to be used or stored in connection with Tenant's use of the demised premises permitted under this Lease or the maintenance of the demised premises and (ii) are used or stored in accordance with all applicable laws, ordinances, regulations and permits. If any release, spill or discharge of any Hazardous Substance occurs during the Term in, on, from or onto the demised premises in violation of any applicable law, permit, ordinance or regulation, except for any such release, spill or discharge caused by Landlord, Tenant shall promptly, with Landlord's written approval and at Tenant's sole cost, investigate and remediate such release, spill or discharge as required by all applicable laws, ordinances and regulations and governmental authorities; provided, however, that if immediate action to remediate any such release, spill or discharge is required in order to prevent migration of any Hazardous Substance or damage or injury to the environment, property or persons, Tenant may immediately commence remediation actions necessary to prevent such migration, damage or injury without Landlord's prior approval as long as Tenant immediately gives Landlord written notice of such release, spill or discharge and Landlord thereafter has the right to approve any further remediation actions with respect to such release, spill or discharge, including the continuance of the remediation actions commenced by Tenant without Landlord's approval. Such investigation and remediation shall not operate to limit Tenant's indemnity or insurance obligations under this Lease. If, in the course of such remediation by Tenant, the presence of Hazardous Substances unrelated to the release, spill or discharge of Hazardous Substances which are the subject of such remediation are discovered in or on the demised premises in violation of any applicable law, permit, ordinance or regulation and such contamination existed prior to the Effective Date (the "Pre-Existing Contamination"), Landlord shall be responsible, at its sole cost, for investigating and remediating the Pre-Existing Contamination. If any release, spill or discharge of any Hazardous Substance occurs during the Term in, on, from or onto the demised premises in violation of any applicable law, permit, ordinance or regulation and is caused by Landlord, Landlord shall promptly, at Landlord's sole cost, investigate and remediate such release, spill, discharge or presence as required by all applicable laws, ordinances, regulations and governmental authorities. Notwithstanding anything to the contrary contained herein, if any release, spill or discharge arises out of or relates to the Part B Permit Operation and is caused by any act or omission of the Part B Permit Service Provider or any of its agents, contractors, employees or invitees, including but not limited to the failure of the Part B Permit Service Provider to perform or observe any covenant or obligation under any Demised Premises Service Agreement, such release, spill or discharge shall not be deemed to have been caused by Landlord for purposes of this Lease. As used herein, the term "Hazardous Substance" shall mean asbestos or asbestos containing products, polychlorinated biphenyls, petroleum or any petroleum based product, or any substance or material defined or designated as hazardous or toxic waste, hazardous or toxic material, a hazardous, toxic or radioactive substance, a contaminant, a pollutant or other similar term, by any federal, state or

3168563v1
07354/089974

6

local environmental statute, regulation or ordinance presently in effect, including but not limited to the Resource Conservation and Recovery Act, as amended, 42 U.S.C. §6901 et seq., the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §9601 et seq., and the Michigan Natural Resources and Environmental Protection Act, as amended, MCL § 324.101 et seq. Landlord's and Tenant's obligations under this Paragraph 7(b) shall survive the expiration or termination of this Lease.

## INDEMNITY AND INSURANCE:

8. (a) (i) Tenant shall indemnify and hold Landlord harmless from and against any and all liabilities, damages, losses, or expenses, including any court costs and attorney's fees, incurred by Landlord which arise out of claims asserted against Landlord by third parties for any personal injury or death or damage to property resulting from an event occurring in or upon the demised premises except to the extent caused by the negligence or willful misconduct of Landlord or any of Landlord's agent, contractors or employees.

(ii) Landlord shall indemnify and hold Tenant harmless from and against any and all liabilities, damages, losses or expenses, including any court costs and attorney's fees, incurred by Tenant which arise out of claims asserted against Tenant by third parties for personal injury or death or damage to the property of such third parties resulting from the negligence or willful misconduct of Landlord or any of Landlord's agents, contractors or employees occurring during the Term and within the demised premises.

(iii) Notwithstanding anything to the contrary contained herein, in no event shall the negligence or willful misconduct of any Part B Permit Service Provider or any of its agents, contractors, employees or invitees be deemed, for purposes of this Lease, to constitute the negligence or willful misconduct of Landlord or any of Landlord's agents, contractors or employees.

(iv) Any claim for indemnification under this Paragraph 8 shall be subject to the same procedures, terms and conditions as are applicable to a claim for indemnification under Paragraph 7 of the Existing Demised Premises Service Agreement.

(v) The terms and provisions of this Paragraph 8(a) shall survive the expiration or termination of this Lease.

(b) Tenant shall procure and maintain during the Term, at its own expense, (i) commercial general liability insurance with limits of not less than $1,000,000 for damages resulting from one occurrence and $2,000,000 for property damages occurring in, on or about the demised premises, and including coverage for Tenant's liability under subparagraph (a) hereof, (ii) all-risk property and casualty insurance, including theft, vandalism and malicious mischief, written at full replacement cost value and with full replacement cost endorsement, covering all of Tenant's personal property in the demised premises (including, without limitation, all inventory, trade fixtures, floor coverings, furniture and other personal property) and all alterations and improvements made to the demised premises by Tenant, and (iii) during the period of any

3168563v1
07354/089974

7

construction or renovation or alteration of the demised premises, all-risk builder's risk insurance in an amount equal to the contemplated cost of such construction, renovation or alteration.

(c) Landlord shall procure and maintain during the Term (i) all-risk property and casualty insurance, including theft, vandalism and malicious mischief, written at full replacement cost value and with full replacement cost endorsement, covering the buildings and improvements constituting a portion of the demised premises and (ii) if applicable, comprehensive boiler and machinery equipment insurance, including electrical apparatus, at full replacement cost. Landlord may also procure and maintain loss of rents insurance covering rent under the Lease. Tenant shall pay to Landlord, as additional rent, all premiums for insurance policies procured by Landlord pursuant to this subparagraph (c). Landlord shall invoice Tenant from time to time for such premiums and Tenant shall pay each such invoice to Landlord within ten days after Tenant's receipt thereof.

(d) All such insurance required to be maintained by Tenant shall be issued by companies rated equal to or better than Great American as rated in Best's Key Rating guide for property and liability companies. All such insurance required to be maintained by Tenant pursuant to this Paragraph 8 shall, except for the insurance required by subparagraph (b)(ii) of this Paragraph 8, name Landlord and Landlord's mortgagee, if any, as additional insureds, provide for coverage on an "occurrence" basis, and contain an agreement by the insurer that such policy shall not be canceled or materially changed without at least thirty (30) days' prior written notice to Landlord. In addition, the insurance required to be maintained pursuant to subparagraph (b)(iii) of this Paragraph 8 shall, identify the mortgagee, if any, under the standard mortgagee clause (non-contributory) endorsement or if no mortgagee then exists, shall name Landlord as loss payee. All insurance required to be maintained by Tenant shall be subject to deductibles satisfactory to Landlord and any mortgagee and shall otherwise be in form and substance satisfactory to Landlord and any mortgagee. Tenant shall keep all such insurance in force during the Term and shall deliver the policies or copies thereof to Landlord and renewals thereof as required shall be delivered to Landlord at least thirty (30) days prior to the expiration of such insurance.

(e) In the event that an insurance escrow is now or hereafter required by any mortgagee with respect to any insurance required to be maintained by Tenant or Landlord under this Lease, Tenant shall, at the request of Landlord, pay to Landlord as additional rent hereunder (i) on the first day of each and every month during the term hereof following such request, a sum equal to one-twelfth (1/12) of the annual insurance premiums for all such insurance for which an escrow is required as estimated by such mortgagee, and (ii) a sum equal to the initial insurance escrow payment required by such mortgagee, all of which payments shall be deposited by Landlord into such escrow account as may be required by Landlord's mortgagee.

(f) Landlord and Landlord's agents and employees shall not be liable to Tenant or any other person or entity whomsoever for any injury to persons or damage to property caused by the demised premises becoming out of repair or by defect in or failure of equipment, pipes or wiring, or broken glass, or by the backing up of drains, or by gas, water, steam, electricity or oil or chemicals leaking, escaping or flowing into the demised premises, nor shall Landlord be liable to Tenant or any other person or entity whomsoever for any loss or damage

3168563v1
07354/089974

8

that may be occasioned by or through the acts or omissions of other persons or entities whomsoever.

## MUTUAL RELEASE:

9. Each party hereto does hereby remise, release and discharge the other party hereto and any officer, agent, employee or representative of such party of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty as shall be insurable against under present or future forms of all risk coverage policies which are standard for use in the State of Michigan.

## IMPROVEMENTS, REPAIRS, ADDITIONS, REPLACEMENTS and SURRENDER:

10. (a) Tenant shall, at all times during the Term, and at its own cost and expense, keep and maintain or cause to be kept and maintained, the demised premises in a condition at least as good as that which existed on the Effective Date and shall use all reasonable precautions to prevent waste, damage or injury. However, Landlord is responsible for all maintenance related solely to the Part B Permit Space except for any maintenance necessitated by (a) the negligence or willful misconduct of Tenant, any Part B Permit Service Provider, or any of their respective agents, contractors, employees or invitees or (b) the failure of Tenant or any Part B Permit Service Provider to perform or observe any of its covenants or obligations under this Lease or any Demised Premises Service Agreement. Landlord shall not be required to furnish any services or facilities or to make any improvements, repairs or alterations in or to the demised premises during the Term and shall have no obligations with respect to the demised premises except as expressly provided for in this Lease.

(b) Upon the expiration or termination of this Lease, Tenant shall surrender and deliver the demised premises to Landlord free and clear of all debris, rubbish and other personal property (other than personal property of Landlord or any of its agents, contractors or employees), broom clean and otherwise in a condition at least as good as that which existed on the Effective Date, subject to maintenance required to be performed by Landlord pursuant to the second sentence of Paragraph 10(a) above. In addition, Tenant shall, prior to the expiration or termination of this Lease and at its sole expense, (i) remove all substances contained within and other contents of any tanks or tank farms located in or on the demised premises, other than those tanks used by Landlord in connection with the Part B Permit Operation and (ii) dispose of such substances at a location outside of the demised premises in accordance with applicable laws.

## ALTERATIONS AND FIXTURES:

11. Tenant may not make any alterations or improvements to the demised premises without the prior written consent of Landlord. All alterations and improvements to the demised premises shall be constructed and installed by Tenant in a good and workmanlike manner, in compliance with all governmental requirements and the requirements of any mortgage by which Landlord may be bound. Any equipment and trade fixtures placed or installed in or upon the demised premises by Tenant shall remain its property and Tenant shall, on or before the termination of this Lease, remove such equipment and fixtures and repair any damage to the

3168563v1
07354/089974

9

Case 3:21-cv-00458-KDB-DSC   Document 1378-12   Filed 03/21/22   Page 10 of 20

demised premises resulting therefrom. Any alterations and improvements made by Tenant to the demised premises shall remain upon the demised premises and become the property of Landlord except that Tenant shall remove any such alterations and improvements (a) designated by Landlord for removal at any time prior to the expiration or termination of this Lease if Landlord did not consent to such alterations and improvements or (b) designated by Landlord for removal at the time Landlord consented to any such alterations or improvements. Tenant shall repair any damage to the demised premises resulting from the removal of any such alterations and improvements.

## DAMAGE BY FIRE, ETC:

12. In the event that, at any time during the Term, the demised premises shall be destroyed or damaged in whole or in part by fire or any other cause covered by insurance so as to become partially or totally untenantable, the demised premises shall be repaired by Landlord, at Landlord's expense, within a period of time which, under all prevailing circumstances, shall be reasonable. However, if such repairs are not completed within 30 days from the date the damage occurs, Tenant will be entitled to a reduction in base rent, in an amount based upon the portion of the Buildings rendered untenantable, for the period from the date of the damage until the damage is repaired or such portion of the demised premises is otherwise rendered tenantable. Notwithstanding the foregoing, if the demised premises shall be damaged or destroyed by fire or other casualty and Landlord chooses not to repair, Landlord shall have the right to terminate this Lease by giving Tenant written notice thereof within 45 days after Tenant gives Landlord written notice of such casualty. Upon the giving of such notice, this Lease shall terminate as of the date on which the casualty occurred and the rent shall be adjusted to that date.

## EMINENT DOMAIN:

13. (a) If the whole of the demised premises shall be taken for any public or quasi-public use under any statute or by right of eminent domain or by private purchase in lieu thereof, then this Lease shall automatically terminate as of the date possession has been taken. In the event less than the whole of the demised premises shall be so taken (or purchased) and such taking or purchase materially and adversely affects the operation or use of the remaining portion of the demised premises not so taken, either party shall have the right, but not the obligation, to terminate this Lease by giving written notice of such termination to the other party within sixty (60) days after the date of such taking (or purchase), and upon the giving of such notice of termination, the Term shall expire and come to an end on the last day of the calendar month in which such notice shall be given, with the same force and effect as if said day had been originally fixed herein as the expiration date of the Term. In the event this Lease shall terminate or shall be terminated, the rental shall, if and when necessary, be adjusted to the day of the taking (or purchase).

(b) In the event of a taking (or purchase) of all or a portion of the demised premises, regardless of whether such taking (or purchase) results in termination of this Lease pursuant to Paragraph 13(a) hereof, each of the parties shall be entitled to its respective award under applicable law, subject to the prior rights of Landlord's mortgagee; provided, however, that

3168563v1
07354/089974

10

Case 3:21-cv-00458-KDB-DSC   Document 1378-12   Filed 03/21/22   Page 11 of 20

Landlord, not Tenant, shall be entitled to any award for the value of Tenant's leasehold estate created pursuant to this Lease.

## TAXES AND UTILITY EXPENSES:

14. (a) Landlord shall pay or cause to be paid, all real property taxes and special assessments (hereinafter referred to as "Real Estate Taxes"), which shall or may during the Term be charged, levied, laid, assessed, imposed, become due and payable, or liens upon or for or with respect to the demised premises or any part thereof. In addition, Landlord shall pay or cause to be paid any personal property taxes which shall or may during the Term be charged, levied, laid, assessed, imposed, become due and payable or liens upon or for or with respect to any of Landlord's personal property located within the demised premises. Tenant shall pay or cause to be paid any personal property taxes which shall or may during the Term be charged, levied, laid, assessed, imposed, become due and payable or liens upon or for or with respect to any of Tenant's personal property located within the demised premises. Tenant shall pay to Landlord, as additional rent, all Real Estate Taxes; provided, however, that if any Real Estate Taxes consist of a special assessment which is payable in installments, Tenant shall be obligated to pay only those installments of such assessment which become due during the Term. Landlord shall furnish Tenant from time to time with bills for Real Estate Taxes issued by any governmental authority and Tenant shall pay to Landlord each such bill within ten days after Tenant's receipt of such bill.

(b) All costs and charges for sewer services, water, steam, heat, gas, hot water, electricity, light and power, and other service or services furnished to the demised premises or the occupants thereof during the Term shall be paid by Tenant as and when the same shall become due and payable.

(c) If at any time during the Term the present method of taxation shall be changed so that in lieu of the whole or any part of any Real Estate Taxes levied, assessed or imposed on real estate and the improvements thereon, there shall be levied, assessed or imposed on Landlord a capital levy or other tax directly on the rents received therefrom and/or an assessment, levy or charge measured by or based, in whole or in part, upon such rents or the present or any future buildings or buildings constituting a portion of the demised premises, then all such taxes, assessments, levies or charges, or the part thereof so measured or based, shall be deemed to be included within the term "Taxes" for the purposes hereof.

(d) In the event that a tax escrow is now or hereafter required by any mortgagee, Tenant shall, at the request of Landlord, pay to Landlord as additional rent hereunder, (i) on the first day of each and every month during the term hereof following such request, a sum equal to one-twelfth (1/12) of the annual cost of all taxes, assessments and charges set forth in subparagraph (a) of this Paragraph 4 as estimated by such mortgagee, and (ii) a sum equal to the initial tax escrow payment required by such mortgagee, all of which payments shall be deposited by Landlord into such escrow account as may be required by Landlord's mortgagee.

11

3168563v1
07354/089974

(e) Landlord shall not be liable for any interruption or failure whatsoever in utility services and Tenant shall comply with all terms and provisions of this Lease notwithstanding any such failure or interruption.

## ACCESS TO DEMISED PREMISES:

15. (a) Landlord and its representatives shall have the right to enter upon the demised premises at all reasonable times upon reasonable prior notice to Tenant (except in the event of an emergency) for the purpose of inspecting the same or showing the demised premises to prospective purchasers, tenants or lenders. In addition, Landlord and its representatives shall have the right to enter upon the demised premises to review and copy books and records that relate solely to the Part B Permit pursuant to and in accordance with the terms of Section 4 of the Existing Demised Premises Service Agreement. Landlord shall have the right during the last twelve (12) months of the Term to erect on the demised premises suitable signs indicating that the demised premises is available for sale or lease.

(b) (i) Landlord and its representatives shall have reasonable access to the demised premises in order to permit Landlord to take actions appropriate to address (A) environmental issues existing on the demised premises prior to the commencement of the Term or (B) any release, spill or discharge of Hazardous Substances arising (y) after the commencement of the Term and (z) out of the Part B Permit Operation (the "Environmental Activities"); provided, however, that unless a governmental agency or authority requires sooner action, Landlord shall provide Tenant with at least thirty (30) days notice prior to commencing any such Environmental Activities upon the demised premises.

(ii) Notwithstanding the foregoing, in the event that Tenant is not able to operate its business upon the demised premises for a period of more than five (5) consecutive days as a result of any Environmental Activities, except for any Environmental Activities conducted to address any release, discharge or spill described in subparagraph (b)(i)(B) above which is caused by any act or omission of Tenant or any Part B Permit Service Provider or any of their respective agents, contractors, employees or invitees, Landlord shall pay Tenant that Certain Amount. "Certain Amount" means the product of: (y) the number of days in the Non-Operational Period (as defined below), less the total number of days notice Landlord gave Tenant; multiplied by (z) the average daily net profit that Tenant can demonstrate, in accordance with its books and records as maintained in the ordinary course of business, was lost. The "Non-Operational Period" means the period of time from and including the date Tenant first could not operate its business as a result of such Environmental Activities (the "Non-Operational Commencement Date") to the day immediately preceding the earliest of the date (A) Tenant could operate such business in another location, (B) such Environmental Activities cease, (C) Tenant has resumed or is able to resume the conduct of the business upon the demised premises in substantially the same manner as it was conducted prior to the cessation of the conduct of such business, or (D) which is the six month anniversary of the Non-Operational Commencement Date.

(iii) The foregoing access shall allow Landlord to perform any inspection, testing, remediation or any other activity deemed necessary by the Landlord in Landlord's sole discretion. Landlord and Tenant are each familiar with the environmental condition of the demised premises and acknowledge that this access serves as part of the consideration for Landlord's execution of this Lease. Tenant agrees, at no cost, charge or expense to Landlord, to cooperate with Landlord fully in addressing the existing environmental conditions of the demised premises. Tenant shall not damage, alter or remove any equipment, supplies, or other items or materials used or placed on the demised premises pursuant to the right of access or otherwise interfere with Landlord's conduct of any activities pursuant to this subparagraph (b). Tenant acknowledges that, except as otherwise provided above, such Environmental Activities shall not constitute a constructive eviction, shall not be the basis for abatement of rent and shall not give rise to a claim for damages. Landlord's access and Tenant's compliance with its obligations under this paragraph shall, except as otherwise provided above, be at no expense, charge or cost to the Landlord.

## HOLDING OVER:

16. Tenant shall have no right to hold over or remain in possession of the demised premises or any part thereof after the expiration or earlier termination of this Lease, and no tenancy from month to month, at will or otherwise shall be created by reason of any such holdover, it being acknowledged and agreed that Landlord shall be entitled to immediate possession of the demised premises upon the expiration or earlier termination of this Lease, and may thereafter institute summary proceedings to recover possession of the demised premises without being required to give Tenant any notice to quit or to vacate the demised premises. If Tenant remains in possession of the demised premises or any part thereof subsequent to the expiration or earlier termination of this Lease, Tenant shall, at Landlord's election, either (i) pay to Landlord as liquidated damages, and not as a penalty or as rent, for such holdover an amount equal to five percent (5%) of the base rent payable under Paragraph 3(a) for the month immediately preceding the month in which this Lease expires or terminates per day for each day after the expiration or earlier termination of this Lease that Tenant remains in possession of the demised premises or any part thereof or (ii) pay to Landlord all damages, whether consequential, special or otherwise, incurred by Landlord, including but not limited to damages arising out of the loss of any lease of the demised premises, which result from Tenant remaining in possession of the demised premises or any part thereof subsequent to the expiration or earlier termination of this Lease. The parties hereby acknowledge and agree that it would be difficult, if not impossible, to determine the actual damages Landlord would incur if Tenant fails to surrender possession of the demised premises to Landlord on or before the expiration or earlier termination of this Lease, and that the liquidated damages provided for in the immediately preceding sentence represents a good faith, reasonable estimate by the parties hereto of the actual damages Landlord will incur if Tenant remains in possession of the demised premises or any part thereof subsequent to the expiration or earlier termination of this Lease. Tenant covenants and agrees that it shall surrender possession of the demised premises to Landlord on or before the expiration or earlier termination of this Lease. Time is of the essence with respect to Tenant's obligations under this paragraph.

Case 3:21-cv-00458-KDB-DSC   Document 1378-12   Filed 03/21/22   Page 14 of 20

## DEFAULT:

17. (a) If Tenant shall be in default in performing or observing any of the terms of this Lease other than the payment of rent or any other sum payable by Tenant to Landlord under this Lease, Landlord may (at its option) cure such default for the account of Tenant, and any sum so expended by Landlord, together with interest thereon from the date such sum was expended at a rate equal to three percent (3%) above the Prime Rate being quoted by *The Wall Street Journal* on the date such sum was expended (but in no event in excess of the maximum rate permitted by law), shall be additional rent for all purposes hereunder, and shall be paid by Tenant within ten (10) days after the presentation of a statement therefor. In connection therewith, Landlord, may enter upon the demised premises to effect such cure.

(b) If (i) any rent shall be due and unpaid under this Lease, or (ii) Tenant shall be in default upon any of the other terms of this Lease, and such default is not cured within 30 days after Landlord gives the Tenant written notice of such default, or (iii) a Material Default (as defined in that certain Cross Default Agreement of even date herewith by and among Landlord, Tenant, and certain other parties) occurs, then Landlord, in addition to all other remedies available to Landlord under this Lease or at law or in equity, shall have the option to (1) terminate this Lease in which event Tenant shall immediately surrender the demised premises to Landlord and if Tenant fails to do so, Landlord may enter upon and take possession of the demised premises and expel or remove Tenant and any other person who may be occupying the demised premises or any part thereof pursuant to legal proceedings or otherwise in accordance with law; or (2) without terminating this Lease, enter upon and take possession of the demised premises and expel or remove Tenant and any other person who may be occupying the demised premises or any part thereof pursuant to legal proceedings or otherwise in accordance with law. Should Landlord re-enter or take possession pursuant to legal proceedings or any notice provided for by law, regardless of whether Landlord terminated the Lease, then Tenant shall be liable for and shall pay to Landlord all rent and other indebtedness of Tenant to Landlord accrued to the date of such repossession, plus rent and other sums provided for herein for the period which constitutes the balance of the Term or which would otherwise have constituted the balance of the Term but for the termination of this Lease (payable on the date the same became due or would have become due but for the termination of this Lease), all pre- and post-termination costs incurred by Landlord in connection with reletting the demised premises (including but not limited to costs of repairs and tenant improvements and broker's and reasonable attorney's fees), all expenses incurred by Landlord in enforcing or defending Landlord's rights and remedies, including but not limited to reasonable attorney's fees, and all other pre- and post-termination damages and costs incurred by Landlord by reason of such default of Tenant and/or any such termination, re-entry and/or reletting, diminished by any sums thereafter received by Landlord through reletting the demised premises during said period. The avails of such reletting shall be applied: (A) first, to the payment of any indebtedness of Tenant to Landlord other than amounts described in (B) or (C) of this sentence; (B) second, to the payment of any costs of such reletting; (C) third, to the payment of rent due and unpaid hereunder; and (D) the residue, if any, shall be held by Landlord and applied to payment of future rent and other indebtedness of Tenant to Landlord as the same may become due and payable. Should the avails of such reletting, if any, during any month be less than the sum of the monthly rent reserved hereunder and all other then outstanding indebtedness of Tenant to Landlord, then Tenant shall during each such month pay

14

3168563v1
07354/089974

such deficiency to Landlord. In no event shall Tenant be entitled to any excess of any rent obtained by reletting over and above the rent herein reserved. No termination of this Lease pursuant to this subparagraph (b) shall relieve or release Tenant from the performance or observance of any its obligations or covenants under this Lease, and all such obligations and covenants shall survive any such termination.

Notwithstanding any other provision hereof, Landlord shall not have any personal liability hereunder. In the event of any breach or default by Landlord in any term or provision of this Lease, Tenant agrees to look solely to the equity or interest then owned by Landlord in the demised premises and the proceeds derived from the sale of any interest therein; however, in no event, shall any deficiency judgment or any money judgment of any kind be sought or obtained against Landlord, any of its successors or assigns under this Lease or any of their respective partners, officers, members, directors or shareholders.

## NO IMPLIED WAIVER:

18. One or more waivers of any covenant or condition shall not be construed as a waiver of a further breach of the same covenant or condition.

## NOTICES:

19. Whenever under this Lease provision is made for notice of any kind, it shall be deemed sufficient notice and service thereof if such notice to Tenant is in writing, addressed to Tenant at the address set forth on page 1 hereof, and sent by registered or certified mail, return receipt requested, recognized overnight delivery service or fax, and if such notice to Landlord is in writing, addressed to Landlord at the address set forth on page 1 hereof, and sent by registered or certified mail, return receipt requested, recognized overnight delivery service or fax. Landlord and Tenant may change the address to which notices are to be sent by written notice to the other.

## PEACEFUL POSSESSION:

20. So long as Tenant is not in default in the performance or observance of any of its covenants or obligations under this Lease, Tenant's quiet and peaceful enjoyment of the demised premises shall not be disturbed or interfered with by Landlord or by any person claiming by, through or under Landlord, subject to the terms of this Lease.

## REPRESENTATIONS

21. No agreement shall be binding upon either party unless made in writing and signed by it. No representation, guaranty or warranty, except such as are herein contained, nor any collateral agreement hereto, shall be binding unless the same be in writing and shall refer to this Lease.

3168563v1
07354/089974

15

## CUMULATIVE RIGHTS:

22. All rights and remedies of Landlord and Tenant under this Lease shall be cumulative and none shall exclude any other remedies provided by law or equity.

## BROKER'S COMMISSION:

23. Each party represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with the execution of this Lease, and each party agrees to indemnify the other against and hold it harmless from, any liability arising from any such claim (including, without limitation, the cost of counsel fees in connection therewith).

## GOVERNING LAW:

24. This Lease shall be governed by and construed in accordance with the laws of the State of Michigan without regard to the conflict of laws rules thereof; provided, that the law of the State in which the demised premises is located (the "Situs State") shall govern procedures for enforcing, in the Situs State, provisional and other remedies directly related to the demised premises as may be required pursuant to the law of the Situs State. If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease or the application of such term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and be enforced to the fullest extent permitted by law.

## NO OPTION:

25. The submission of this Lease for examination does not constitute a reservation of or option for the demised premises, and this Lease becomes effective as a lease only upon execution and delivery thereof by Landlord and Tenant.

## MARGINAL NOTES, ETC.:

26. The marginal notes in this Lease are inserted only for convenience and are not to be construed as part of this Lease or as in any way affecting it. This Lease may be modified or altered only by agreement in writing between the parties. Whenever herein the singular number is used the same shall include the plural, and the masculine gender shall include the feminine and neuter genders.

## BINDING ON SUCCESSORS:

27. The covenants, conditions and agreements made and entered into by the parties hereto shall inure to the benefit of and shall be binding upon their respective heirs, successors, representatives and assigns.

3168563v1
07354/089974

16

## CONSTRUCTION LIENS:

28. Tenant shall have no authority, express or implied, to create or place any lien or encumbrance of any kind or nature whatsoever upon, or in any manner to bind, the interest of Landlord or Tenant in, the demised premises or to charge the rentals payable hereunder for any claim in favor of any person dealing with Tenant, including those who may furnish materials or perform labor for any construction or repairs. Tenant covenants and agrees that it will pay or cause to be paid all sums legally due and payable by it on account of any labor performed or materials furnished in connection with any work performed on the demised premises on which any lien is or can be validly and legally asserted against its leasehold interest in the demised premises. Tenant will indemnify, defend, protect and hold Landlord harmless from any and all loss, cost or expense based on or arising out of asserted claims or liens against the leasehold estate or against the right, title and interest of the Landlord in the demised premises arising in connection with any contract entered into by Tenant, out of any work performed on the demised premises (other than by Landlord) or pursuant to any act or omission of Tenant, any of its subtenants, or any of the agents, contractors, employees, concessionaires or licensees of Tenant or any such subtenant, which obligation of Tenant shall survive the expiration or termination of this Lease. Tenant shall discharge any such lien by payment or bonding within thirty (30) days after any such lien is filed. Tenant's obligations under this Paragraph 28 shall survive the expiration or termination of this Lease.

## LATE CHARGES:

29. In the event Tenant fails to pay to Landlord when due any installment of rent or other sum to be paid to Landlord which may become due hereunder, the parties hereto acknowledge and agree that Landlord will incur additional expenses in an amount not readily ascertainable and which has not been elsewhere provided for between Landlord and Tenant. If Tenant should fail to pay to Landlord any installment of rent or other sum to be paid hereunder within five (5) days after it becomes due, Tenant will pay Landlord on demand a late charge of three percent (3%) of such installment or other sum overdue in any month (with a minimum charge of One Hundred Dollars ($100.00)). Provision for such late charge shall be in addition to all other rights and remedies available to Landlord hereunder or at law or in equity and shall not be construed as liquidated damages or limiting Landlord's remedies in any manner.

## CERTIFICATES:

30. Tenant shall, without charge, at any time and from time to time hereafter, within ten (10) days after written request of Landlord, certify by written instrument duly executed and acknowledged to any mortgagee or purchaser, or proposed mortgagee or proposed purchaser, or any other person, firm or corporation specified in such request: (a) as to whether this Lease has been supplemented or amended, and if so, the substance and manner of such supplement or amendment; (b) as to the validity and force and effect of this Lease, in accordance with its tenor as then constructed; (c) to the best of Tenant's knowledge, as to the existence of any default thereunder; (d) to the best of Tenant's knowledge, as to the existence of any offsets, counterclaims or defenses hereto on the part of Tenant; (e) as to the commencement and expiration dates of the term of this Lease; and (f) as to any other matters as may reasonably be so

17

3168563v1
07354/089974

requested. Any such certificate may be relied upon by Landlord and any other person, firm or corporation to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

## ATTORNEYS' FEES:

31. If suit shall be brought for recovery of possession of the demised premises or the recovery of rent or any other amount due under the provisions of this Lease or because of the breach of any covenant herein contained on the part of either party to be kept or performed and a breach shall be established, the losing party shall pay to the prevailing party all expenses incurred therefor, including attorneys' fees and disbursements.

## MUTUAL NEGOTIATION; CONSTRUCTION:

32. Landlord and Tenant expressly acknowledge that each party has been represented by independent legal counsel of its own choosing in negotiating this Lease. This Lease shall therefore be deemed to have been negotiated and prepared at the joint request, direction, and construction of the parties, at arm's length, with the advice and participation of counsel, and will be interpreted in accordance with its terms without favor to any party. No rule of strict construction will be applied against any party.

## SIGNS:

33. Tenant shall have the right to install, maintain and replace in, on or over the demised premises a sign identifying Tenant, provided that Tenant shall comply with any applicable requirements of governmental authorities having jurisdiction and shall obtain any necessary permits for such sign. Such sign shall be kept by Tenant in good condition and proper operating order at all times. Upon the expiration or earlier termination of this Lease, Tenant shall remove such sign from the demised premises and repair any damage to the demised premises caused by such removal.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

3168563v1
07354/089974

Case 3:21-cv-00458-KDB-DSC   Document 1378-12   Filed 03/21/22   Page 19 of 20

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the day and year first above written.

IN THE PRESENCE OF:　　　　　　　　　LANDLORD:

　　　　　　　　　　　　　　　　　　　　DETREX CORPORATION,
　　　　　　　　　　　　　　　　　　　　a Michigan corporation

*/s/ Stephanie K. Shaw/*　　　　　　　　　By: */s/ Robert M. Currie/*

　　　　　　　　　　　　　　　　　　　　Its: Vice President, General Counsel
　　　　　　　　　　　　　　　　　　　　　　& Secretary


TENANT:

PARTS CLEANING TECHNOLOGIES,
OF NORTH CAROLINA, INC., a Michigan
corporation

*/s/ signature/*　　　　　　　　　　　　　By: */s/ David R. Crandell/*

　　　　　　　　　　　　　　　　　　　　Its: PRESIDENT

3168563v1
07354/089974