# EXHIBIT L

# SERVICE AGREEMENT

THIS SERVICE AGREEMENT (the "Agreement") is made as of June 1, 2002 by and between DETREX CORPORATION, a Michigan corporation ("Detrex), and SOLVENT DISTRIBUTORS OF NORTH CAROLINA, INC., a Michigan corporation ("SD").

WHEREAS, Detrex operates a line of business known as the Parts Cleaning Technologies Division which is in the business, at the premises located at 3114 Cullman Avenue, Charlotte, NC 28206 (the "Property"), of distributing solvents and parts cleaning products, providing parts cleaning services, and assisting customers in the analysis and implementation of their cleaning operations (the "Business");

WHEREAS, in connection with the operation of the Business, Detrex holds a Resource Conservation and Recovery Act Part B Permit (the "Part B Permit");

WHEREAS, pursuant to the terms of a certain Asset Purchase Agreement of even date herewith by and between Detrex and Parts Cleaning Technologies of North Carolina, Inc. ("PCT"), an affiliate of SD (the "Asset Purchase Agreement"), Detrex has agreed to sell assets of the Business (the "Assets"), which Assets do not include the Part B Permit, the assets related to the Part B Permit as listed on Schedule 1, or the operations of the Business conducted with respect thereto, to PCT;

WHEREAS, pursuant to the Asset Purchase Agreement, Detrex and PCT agreed that Detrex and SD would enter into this Agreement as part of the consideration under the Asset Purchase Agreement;

WHEREAS, as of the date hereof, pursuant to a lease (the "Lease"), Detrex is leasing the Property to PCT; provided, that Detrex shall be permitted to comply with and maintain in effect the Part B Permit at the Property; and

WHEREAS, SD agrees to perform, on behalf of Detrex, certain actions relating to the Part B Permit, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Services</u>. SD agrees to perform, on behalf of Detrex, the services listed on Schedule 2 hereto relating to the Part B Permit (the "Services"). Detrex will remain responsible for all requirements relating to the Part B Permit that are not included in the Services, as listed on Schedule 3 ("Other Actions"). SD and Detrex shall conduct the Services and Other Actions, respectively, in good faith, diligently and using best efforts. SD further agrees that all waste materials disposed of in accordance with the Part B Permit shall be disposed of through recycling or incineration only.

2. <u>Prohibited Actions</u>. In order to perform the Services in the ordinary course of business and consistent with the past practices of Detrex, SD will communicate, from time to time,

3166724-2

with government agencies and regulators regarding the Part B Permit. SD agrees to promptly inform Detrex of all oral communications and to provide copies of all written communications regarding the Part B Permit. All investigations by or inquiries of any government agency or regulator regarding the Part B Permit shall be directed to Detrex. Detrex agrees to promptly inform SD of all oral communications and to provide copies of all written communications it has with any governmental agency or authority regarding the Part B Permit. Each party further agrees that it has no power or authority to create any obligation, express or implied, on behalf of or in the name of the other party or to bind the other party in any manner whatsoever.

3. Access to Books and Records. Each party agrees to provide to the other and its representatives reasonable access to its respective books and records that relate solely to the Part B Permit, for review and copying during regular business hours upon written notice for a proper purpose, without expense to the requesting party. Without the other party's prior written approval, each party agrees not to destroy the books and records that relate solely to the Part B Permit or to move such items from the Property. The covenant in this Paragraph 3 shall apply until the later of: (a) 7 years from the date hereof; or (b) the date Detrex receives a closure letter, from the applicable governmental agency, terminating the Part B Permit.

4. Compliance with Laws. SD and Detrex agree that so long as the Part B Permit is in effect, SD will perform the Services and Detrex will perform the Other Actions in compliance with all, and not in violation of any, applicable federal, state and local statutes, ordinances, laws, rules and regulations (including, without limitation, any statutes, ordinances, laws or regulations relating to the environment, DOT permits, or air permits).

5. Indemnification by SD. From and after the date hereof, except with respect to matters which are the subject of Paragraph 6, SD agrees to indemnify and hold harmless Detrex from and against all taxes, penalties, fines, damages, sanctions, losses, assessments, liabilities, claims, costs and other expenses (including reasonable attorneys' fees), whether or not resulting from third party claims, and net of all tax benefits and available insurance proceeds (collectively "Losses"), arising out of:

(a) any breach or other default of any covenant to be performed after the date hereof on the part of SD contained in this Agreement;

(b) any and all actions or omissions of SD arising after the date hereof; and

(c) any release, spill or discharge of any substance, including Hazardous Substances (as defined below) on the Property, by SD occurring during the term of this Agreement.

The term "Hazardous Substance" means asbestos or asbestos containing products, polychlorinated biphenyls, petroleum or any petroleum based product, or any substance or material defined or designated as hazardous or toxic waste, hazardous or toxic material, a hazardous, toxic or radioactive substance, a contaminant, a pollutant or other similar term, by any federal, state or local environmental statute, regulation or ordinance, including but not limited to the Resource Conservation and Recovery Act, as amended, 42 U.S.C. §6901 et seq., and the Comprehensive

3166724-2

2

Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §9601 et seq.

In connection with the foregoing, SD agrees to name Detrex as an additional insured on its general liability insurance policy and shall submit a copy of such policy to Detrex. Such policy of insurance shall not be cancelled without providing Detrex not less than thirty (30) days' written notice thereof.

6. <u>Indemnification by Detrex</u>. From and after the date hereof, except with respect to matters which are the subject of Paragraph 5, Detrex agrees to indemnify and hold harmless SD, its affiliates and their respective successors and assigns from and against all taxes, penalties, fines, damages, sanctions, losses, assessments, liabilities, claims, costs and other expenses (including reasonable attorneys' fees), whether or not resulting from third party claims, and net of all tax benefits and available insurance proceeds (collectively "Losses") arising out of:

(a) any breach or other default of any covenant to be performed after the date hereof on the part of Detrex contained in this Agreement;

(b) any and all actions and omissions of Detrex arising before the date hereof; and

(c) the environmental condition of the Property prior to the date hereof, including any release, spill, or discharge of any substance, including Hazardous Substances, by Detrex;

provided, however, that in no event may a claim for indemnification be brought against Detrex after the tenth anniversary date of this Agreement, unless such claim relates to environmental matters in which event, the applicable statute of limitations applies.

In connection with the foregoing, Detrex agrees to name SD as an additional insured on its general liability insurance policy and shall submit a copy of such policy to SD. Such policy of insurance shall not be cancelled without providing SD not less than thirty (30) days' written notice thereof.

7. <u>Procedure for Indemnification Claim</u>. (a) The party seeking indemnification (the "Indemnified Party") shall give written notice to the party from whom such indemnification is sought (the "Indemnifying Party") promptly (and in any event within 15 days) after the Indemnified Party (or, if the Indemnified Party is a corporation, any officer or employee of the Indemnified Party) becomes aware of the facts giving rise to such claim for indemnification (an "Indemnified Claim") specifying in reasonable detail the factual basis of the Indemnified Claim, stating the amount of the damages, if known, the method of computation thereof, containing a reference to the provision of this Agreement or any document contemplated herein in respect of which such Indemnified Claim arises and demanding indemnification therefor. The failure of an Indemnified Party to provide notice within the time frame specified in this Paragraph 7 shall not constitute a waiver of that party's claims to indemnification pursuant to Paragraph 5 or 6, as applicable, except to the extent that any such failure or delay in giving notice causes the amounts paid by the Indemnifying Party to be greater than they otherwise would have been or otherwise results in prejudice to the Indemnifying Party. If the Indemnified Claim arises from the assertion of any claim, or the commencement of any suit, action

3166724-2

3

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

or proceeding brought by a person that is not a party hereto (a "Third Party Claim"), any such notice to the Indemnifying Party shall be accompanied by a copy of any papers theretofore served on or delivered to the Indemnified Party in connection with such Third Party Claim.

(b) (i) Upon receipt of notice of a Third Party Claim from an Indemnified Party pursuant to Paragraph 7(a), the Indemnifying Party will be entitled to assume the defense and control of such Third Party Claim subject to the provisions of this Paragraph 7. Notwithstanding anything in this Paragraph 7 to the contrary, if the Indemnifying Party does not assume the defense and control of a Third Party Claim as provided in this Paragraph 7, the Indemnified Party shall have the right to defend such Third Party Claim, subject to the limitations set forth in this Paragraph 7, in such manner as it may deem appropriate. Whether the Indemnifying Party or the Indemnified Party is defending and controlling any such Third Party Claim, they shall select counsel reasonably satisfactory to the other party, and shall at all times diligently and promptly pursue the defense or resolution thereof. The party conducting the defense thereof shall at all times act as if all Losses relating to the Third Party Claim were for its own account and shall act in good faith and with reasonable prudence to minimize Losses therefrom. The Indemnified Party shall, and shall cause each of its affiliates, directors, officers, employees, and agents to, cooperate fully with the Indemnifying Party in connection with any Third Party Claim and to act in good faith in a manner designed to mitigate the Losses associated with such Third Party Claim.

(ii) Subject to the provisions of Paragraph 7(b)(iii), the Indemnifying Party shall be authorized to consent to a settlement of, or the entry of any judgment arising from, any Third Party Claims, and the Indemnified Party shall consent to a settlement of, or the entry of any judgment arising from, such Third Party Claims; provided, that the Indemnifying Party (1) shall pay or cause to be paid all amounts arising out of such settlement or judgment in accordance with its terms; (2) shall not encumber any of the assets of any Indemnified Party or agree to any restriction or condition that would apply to such Indemnified Party or to the conduct of that Party's business; and (3) shall obtain, as a condition of any settlement or other resolution, a complete release of each Indemnified Party with respect to such Third Party Claim. Except for the foregoing, no settlement or entry of judgment in respect of any Third Party Claim shall be consented to by any Indemnifying Party or Indemnified Party without the express written consent of the other Party.

(iii) In the event that the Indemnifying Party desires to settle a Third Party Claim or consent to the entry of any judgment arising thereunder in a manner that satisfies the conditions described in Paragraph 7(b)(ii) and the Indemnified Party does not wish to consent to such settlement or entry of judgment, the Indemnified Party shall have no obligation to consent to the settlement or entry of judgment provided that it agrees in writing to pay and be responsible for 100% of any Losses in excess of the amount to be paid by the Indemnifying Party as a part of such settlement or compromise.

(c) The parties agree to cooperate fully with each other in connection with the defense, negotiation or settlement of any Third Party Claim and to provide each other with all materials, information and data as reasonably requested by the other. The Indemnifying Party shall from time to time and promptly upon the request of the Indemnified Party keep the Indemnified Party reasonably informed of the Indemnifying Party's conduct of and any negotiations relating to the

3166724-2

4

defense of any Third Party Claim and shall use its reasonable efforts to afford the Indemnified Party sufficient notice to enable the Indemnified Party and its advisors to attend as an observer and at the Indemnified Party's cost and expense any meeting in respect of the negotiation of any Third Party Claim.

8. <u>Term</u>. The Services shall commence on the date hereof and continue until the earlier of: (i) termination of this Agreement in accordance with Paragraph 9; or (ii) Detrex's receipt of a closure letter, from the applicable governmental agency, terminating the Part B Permit. Detrex agrees to provide notice to SD of its filing of an application to close.

9. <u>Termination</u>. (a) This Agreement may be terminated by Detrex in the event of SD's Material Default (defined below) of this Agreement that is not cured within thirty (30) days after written notice is provided by Detrex to SD; provided, however, that this Agreement may, at Detrex's option, immediately terminate in the event of a breach that presents an imminent danger to human health or to the environment or for which Detrex may be subject to regulatory fines or sanctions. As used herein, "Material Default" means any of the following: (i) a default or breach for which there is a fine, penalty, charge, or similar assessment equal to or greater than $50,000, whether singly or in the aggregate arising out of the same event or occurrence; (ii) a default or breach for which the necessary corrective action results in costs, fees, or similar expenses of $50,000 or more; (iii) a breach, the damage resulting therefrom is equal to or greater than $50,000; or (iv) a breach that was willful, criminal, malicious, or the result of a pattern of gross negligence.

(b) Unless otherwise agreed in writing by the parties, this Agreement shall terminate upon the termination of the Lease.

10. <u>Notices to Parties</u>. All notices and other communications shall be in writing and effective (a) upon receipt if hand delivered, (b) upon transmission if sent by facsimile (with confirmation of transmittal) and confirmed by U.S. mail, (c) one (1) business day after dispatch by a nationally recognized overnight delivery service, or (d) five (5) days after mailing by certified or registered mail, return receipt requested, to the address stated below, or to such other address as to which any party shall have previously notified the other parties in writing in conformity with this Paragraph 10. Any such notice not contemplated above shall be effective upon receipt. For the purposes of this Paragraph 10, the addresses of the parties shall be as follows:

If to Detrex:  Detrex Corporation
24901 Northwestern Highway
Southfield, Michigan 48075
(248) 799-7192 (FAX)
Attn: Robert M. Currie, Esq.

With a copy to:  Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435
(313) 965-8252 (FAX)
Attn: John J. Hern, Jr., Esq.

3166724-2

5

If to SD:    Solvent Distributors of North Carolina, Inc.
             24482 Redwing Drive
             Novi, Michigan 48374
             (__) _____ (FAX)
             Attn: David R. Crandell

With a copy to: Trowbridge Law Firm, P.C.
             1380 E. Jefferson Ave.
             Detroit, Michigan 48207
             (313) 259-3474 (FAX)
             Attn: Stanley B. Dickson, Jr., Esq.

11. **Public Announcements.** SD acknowledges that Detrex is a publicly held company and that by entering into this Agreement, SD will receive information regarding Detrex which is not available to the general public. SD agrees to use its best efforts so that no officer or director of SD or any employee or agent of SD who has knowledge of the transaction contemplated in this Agreement, or any member of the immediate family or household of such persons, shall engage in any transaction involving a purchase or sale of the stock of Detrex, including any offer to purchase or offer to sell, beginning on the date of this Agreement and ending at the close of business on the second Trading Day (as defined below) following the date of public disclosure of any confidential information (including the fact that the parties have entered into this Agreement or consummated the transactions contemplated herein) provided to SD hereunder, or at such time as such confidential information is no longer material. SD agrees not to engage in any transaction described in the foregoing sentence. As used herein, the term "Trading Day" shall mean a day on which national stock exchanges and the National Association of Securities Dealers, Inc. Automated Quotation System (Nasdaq) are open for trading. Further, no officer, director, employee or agent of SD shall disclose ("tip") confidential information to any other person (including family members) where such information may be used by such person to his or her profit by trading in the securities of Detrex, nor shall any officer, director, employee or agent of SD (including family members) make recommendations or express opinions on the basis of confidential information as to trading in securities of Detrex. Detrex and SD will consult with each other before issuing any press releases or otherwise making any public statements with respect to this Agreement and the transaction contemplated hereby, and shall not issue any such press release or make any such public statement prior to said consultation or as to which a party hereto reasonably objects, except as may be required by law or by obligations pursuant to any listing agreement with any national securities exchange or inter-dealer quotation system.

12. **Subcontracting.** Without the prior written consent of Detrex, SD shall not subcontract, outsource or otherwise allow any other third party to perform the Services; provided, however, that SD may continue to use the services of third parties that have been approved and qualified by Detrex, were used by Detrex prior to the date hereof, and will maintain the level of service provided prior to the date hereof.

13. **Complete Agreement.** This Agreement is the complete agreement between the parties and supersedes all prior negotiations and agreements. There are no representations, warranties,

3166724-2

6

covenants, conditions, terms, agreements, promises, understandings, commitments or other arrangements other than those expressly set forth or incorporated herein or made in writing on or after the date of this Agreement.

14. <u>Governing Law; Forum</u>. This Agreement will be governed by and construed under the laws of the State of Michigan without regard to its conflicts of laws principles. Any suit, action or proceeding arising out of or in connection with, this Agreement, or any of the documents or transactions contemplated herein, shall be brought only in the United States District Court for the Eastern District of Michigan or a state court in Michigan for which jurisdiction is proper. Without limiting the foregoing, the parties agree that service of process upon such party at the address referred to in Paragraph 10, together with written notice of such service to such party, shall be deemed effective service of process upon such party.

15. <u>Binding Agreement; Successors</u>. This Agreement shall be binding upon, inure to the benefit of and be enforceable by the successors, assigns, heirs, legatees, executors, personal representatives, guardians, custodians, administrators and conservators of the parties hereto, provided, however, that no assignment of this Agreement by SD shall be effective without the prior written consent of Detrex.

16. <u>No Third Party Beneficiaries</u>. This Agreement is made solely for the benefit of the parties to this Agreement. Nothing contained in this Agreement shall be deemed to give any person, partnership, joint venture, corporation, governmental authority or other entity any right to enforce any of the provisions of this Agreement, nor shall any of them be a third party beneficiary of this Agreement.

17. <u>Headings</u>. The headings contained herein are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement, nor are they deemed to constitute a part of this Agreement.

18. <u>Waiver</u>. The failure of any party to exercise or enforce any right or remedy conferred upon it hereunder shall not be deemed to be a waiver of any such or other right or remedy nor operate to bar the exercise or enforcement of any thereof at any time thereafter.

19. <u>Mutual Negotiation; Construction</u>. Detrex and SD expressly acknowledge that each party has been represented by independent legal counsel of its own choosing in negotiating this Agreement. This Agreement shall therefore be deemed to have been negotiated and prepared at the joint request, direction, and construction of the parties, at arm's length, with the advice and participation of counsel, and will be interpreted in accordance with its terms without favor to any party. No rule of strict construction will be applied against any party.

20. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

3166724-2

7

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

DETREX CORPORATION

By: /s/ Robert M. Currie
Name: Robert M. Currie
Its: Vice President, General Counsel and Secretary

SOLVENT DISTRIBUTORS OF NORTH CAROLINA, INC.

By: /s/ David R. Crandell
Name: David R. Crandell
Its: President

The undersigned tenant of the Property hereby consents to the foregoing terms and conditions and acknowledges and agrees that the activities contemplated herein may be conducted on the Property.

PARTS CLEANING TECHNOLOGIES OF NORTH CAROLINA, INC.

By: /s/ David R. Crandell
Name: David R. Crandell
Its: President

3166724-2

## SCHEDULE 2

The Services to be performed by SD are:

1. developing and maintaining all paperwork, logs and records for processing waste through the Property;

2. operating the Property in compliance with the Part B Permit and all other applicable environmental laws and regulations;

3. as instructed by Detrex, maintaining the Property as necessary or appropriate under the Part B Permit; Detrex shall be responsible for the maintenance costs required solely to comply with the Part B Permit if such costs are reviewed and approved in writing in advance by Detrex;

4. transporting or arranging for the transport of all wastes generated, stored, treated or otherwise managed at the Property for recycling offsite or for disposal at an offsite incinerator, all in compliance with applicable environmental laws and regulations; and

5. other actions mutually agreed upon by the parties, including the interfacing with any governmental agency or authority (a) to the extent requested by Detrex; or (b) as required to complete the necessary paperwork in the ordinary course of business.

3166724-2

## SCHEDULE 3

The services to be performed by Detrex are:

1. the renewal, if necessary, of the Part B Permit;

2. the maintenance of the surety bonds for closure;

3. the maintenance of the pollution legal liability (PLL) insurance;

4. the training of employees as specifically required by the Part B Permit;

5. the maintenance of those portions of the leased Property utilized for operation of the Part B Permit; and

6. all other requirements of the Part B Permit not performed by SD.

3166724-2