# EXHIBIT Q

I.D. NUMBER NCD 049 773 245
PERMIT NO.   NCD 049 773 245 R2

DATE ISSUED August 7, 2012

# STATE OF NORTH CAROLINA
# DIVISION OF WASTE MANAGEMENT
# HAZARDOUS WASTE MANAGEMENT PERMIT

Permittee: Detrex Corporation
3114 Cullman Avenue
Charlotte, North Carolina 28296

Owner:   Detrex Corporation
24901 Northwestern Highway
Suite 410
Southfield, Michigan 48075

Pursuant to the 15A NCAC 13A North Carolina Hazardous Waste Management Rules, an operating permit is issued to the Detrex Corporation hazardous waste management facility located in the Catawba River Basin in Charlotte, Mecklenburg County on Cullman Avenue, at latitude 35°14'57" and longitude - 80°38'45".

The Permittee must comply with all terms and conditions of the permit.  This permit consists of the conditions discussed in Parts I, II, III, IV, VIII, IX, X, XI and XII; the applicable regulations contained in 15A NCAC 13A including the applicable provisions of 40 CFR Parts 260 through 264, 266, 268, 270 and 124; statutory requirements of N.C.G.S. 130A-Article 9 (Solid Waste Management Act as amended) and the attached Application.

Applicable regulations are those which are in effect on the date of issuance of this permit [40 CFR 270.32(c) as adopted in 15A NCAC 13A.0113] and are attached.

This permit is based on the assumption that the information submitted in the permit application and as modified by subsequent amendments (hereafter referred to as Attachment 1) is accurate and that the facility will be operated as specified in Attachment 1.  Any inaccuracies found in this information could lead to the termination or modification of this permit and potential enforcement action [40 CFR 270.41, 270.42, and 270.43 as adopted in 15A NCAC 13A .0113].  The Permittee shall inform the North Carolina Department of Environment and Natural Resources of any deviation from or changes in the information in the application which would affect the Permittee's ability to comply with the applicable regulations or permit conditions.

This permit is effective as of August 7, 2012, and shall remain in effect for ten (10) years until August 6, 2022, [40 CFR 270.50 as adopted in 15A NCAC 13A .0113] unless revoked and reissued, terminated or continued in accordance with 40 CFR 270.51 as adopted in 15A NCAC 13A .0113.

Elizabeth W. Cannon, Chief
Hazardous Waste Section

Aug. 7, 2012
Date

The State of North Carolina
Department of Environment & Natural Resources
Waste Management Division
Hazardous Waste Section


NCDENR
NORTH CAROLINA DEPARTMENT OF
ENVIRONMENT AND NATURAL RESOURCES

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

## TABLE OF CONTENTS

| PART OF PERMIT | TOPIC |
|---|---|
| PART I | Standard Conditions |
| PART II | General Facility Conditions |
| PART III | Storage in Containers |
| PART IV | Storage/Treatment in Tanks |
| PART V | Reserved |
| PART VI | Reserved |
| PART VII | Reserved |
| PART VIII | Corrective Action for Solid Waste Management Units (SWMUs) and Areas of Concern (AOCs) |
| PART IX | Waste Minimization |
| PART X | Land Disposal Restrictions |
| PART XI | Organic Air Emissions Requirements for Process Vents and Equipment Leaks |
| PART XII | RCRA Organic Air Emission Requirements |

APPENDICES TO THE PERMIT

| Appendix A | Summary of Solid Waste Management Units and Areas of Concern |
| Appendix B | RCRA Facility Investigation (RFI) Workplan Outline |
| Appendix C | Corrective Measure Study (CMS) Plan Outline |
| Appendix D | Schedule of Compliance |

### Attachment 1

Detrex Corporation Hazardous Waste Part B Application

| Section | Topic |
|---|---|
| PART A | Part A Application |
| PART B | Facility Plan |
| PART C | Waste Analysis Plan |
| PART D | Process Information |
| PART E | Groundwater Information |
| PART F | Procedures to Prevent Hazards |
| PART G | Contingency Plan |
| PART H | Personnel Training |
| PART I | Closure Plan |
| PART J | Other Federal Laws |
| PART K | Information Required for Solid Waste Management Units |
| PART L | Air Emission Standards |
| PART M | Owner/Operator Certification |

### Attachment 2

Regulations

| 15A NCAC 13A | May 17, 2011 Certification |

i

# PART I - STANDARD CONDITIONS

A. EFFECT OF PERMIT

The Permittee is allowed to store and treat hazardous waste in accordance with the conditions of this permit until August 6, 2015. Compliance with this permit constitutes compliance, for purposes of enforcement, with the N.C. Hazardous Waste Management Rules (15A NCAC 13A) and N.C.G.S. 130A-Article 9 (Solid Waste Management Act as amended). Issuance of this permit does not convey property rights of any sort or any exclusive privilege; nor does it authorize any injury to persons or property, any invasion of other private rights, or any infringement of State or local law or regulations. Compliance with the terms of this permit does not constitute a defense to any action brought under any law governing protection of public health or the environment for any imminent and substantial endangerment to human health or the environment.

B. PERMIT ACTIONS

This permit may be modified, revoked and reissued, or terminated for cause as specified in 40 CFR 270.41, 270.42, and 270.43 as adopted in 15A NCAC 13A .0113. The filing of a request for a permit modification, revocation and reissuance, or termination or the notification of planned changes or anticipated noncompliance on the part of the Permittee does not stay the applicability or enforceability of any permit condition.

C. SEVERABILITY

The provisions of this permit are severable, and if any provision of this permit or the application of any provision of this permit to any circumstance, is held invalid, the application of such provision to other circumstances, and the remainder of this permit shall not be affected thereby.

D. DUTIES AND REQUIREMENTS

1. Duty to Comply. The Permittee shall comply with all conditions of this permit, except to the extent and for the duration such noncompliance is authorized by an emergency permit issued under 40 CFR 270.61 as adopted in 15A NCAC 13A .0113. Any permit noncompliance constitutes a violation of N. C. Hazardous Waste Management Rules and N.C.G.S. 130A-Article 9 (Solid Waste Management Act as amended) and is grounds for enforcement action, permit termination, revocation and reissuance, modification, or for denial of a permit renewal application.

2. Duty to Reapply. The Permittee shall submit a complete application for a new permit at least 180 days before this permit expires. Owners and operators of hazardous waste management units must have a permit during the active life of the unit and for any period necessary to comply with the corrective action requirements of this permit. The Permittee will not be allowed to reapply for a permit to conduct those activities involving the operation of an active treatment, storage and disposal facility as outlined in Parts II, IIa, III and IV of this Permit.

3. Permit Expiration. Parts I, VIII, IX, X and XI and permit conditions II.B., II.E., II.H., II.N., II.T., II.U., II.V. and II.X. of this permit will remain in effect beyond the permit's expiration date and until a decision is made concerning issuance of a new permit if the Permittee

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

has submitted a timely, complete application at least 180 days before the expiration date of the permit (see 15A NCAC 13A .0113(b), (c), (d), and (e) as required) and through no fault of the Permittee, the Secretary of the Department of Environment and Natural Resources or his designee (hereafter referred to as the Department) has not issued a new permit as set forth in 40 CFR 124.15 as adopted in 15A NCAC 13A .0105.

4. <u>Need to Halt or Reduce Activity Not a Defense</u>. It shall not be a defense for a Permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the conditions of this permit.

5. <u>Duty to Mitigate</u>. The Permittee shall take all reasonable steps to minimize or correct any adverse impact on the environment resulting from noncompliance with this permit.

6. <u>Proper Operation and Maintenance</u>. The Permittee shall, at all times, properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) used by the Permittee to achieve compliance with the conditions of this permit. Proper operation and maintenance includes effective performance, adequate funding, adequate operator staffing and training, and adequate laboratory and process controls, including appropriate quality assurance procedures. This provision requires the operation of back-up or auxiliary facility or similar systems only when necessary to achieve compliance with the conditions of the permit.

7. <u>Duty to Provide Information</u>. The Permittee shall furnish to the Department, within a reasonable time, any relevant information which the Department may request to determine whether cause exists for modifying, revoking and reissuing, or terminating this permit, or to determine compliance with this permit. The Permittee shall also furnish to the Department, upon request, copies of records required to be kept by this permit.

8. <u>Inspection and Entry</u>. The Permittee shall allow the Department or an authorized representative, upon the presentation of credentials and other documents as may be required by law to:

   a. Enter at reasonable times upon the Permittee's premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of this permit;

   b. Have access to and copy, at reasonable times, any records that must be kept under the conditions of this permit;

   c. Inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices, or operations regulated or required under this permit; and

   d. Sample or monitor, at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the N.C. Hazardous Waste Management Rules, any substances or parameters at any location.

9. <u>Monitoring and Records</u>.

   a. Samples and measurements taken for the purpose of monitoring shall be representative of the monitored activity. The method used to obtain a representative sample of the waste to be analyzed must be

Case 3:21-cv-00458-KDB-DSC   Document 1378-18   Filed 03/21/22   Page 5 of 48

the appropriate method from Appendix I of 40 CFR Part 261 as adopted in 15A NCAC 13A .0106 and as stated in Sections C, D, F, G, H, I and L of Attachment 1. Laboratory methods must be those specified in Section C of Attachment 1.

b.   The Permittee shall retain records of all monitoring information, including all calibration and maintenance records and all original strip chart recordings for continuous monitoring instrumentation, copies of all reports and records required by this permit, and records of all data used to complete the application for this permit for a period of at least three (3) years from the date of the sample, measurement, report or record. These periods may be extended by request of the Department at any time and are automatically extended during the course of any unresolved enforcement action regarding this facility.

c.   Records of monitoring information shall include:

i.     The date, exact place, and time of sampling or measurements;
ii.    The individual(s) who performed the sampling or measurements;
iii.   The date(s) analyses were performed;
iv.   The individual(s) who performed the analyses;
v.    The analytical techniques or methods used; and
vi.   The results of such analyses.

10.  Reporting Planned Changes.  The Permittee shall give notice to the Department as soon as possible of any planned physical alterations or additions to the permitted facility, including alterations or additions which may impact any Hazardous Waste Management Units (HWMUs), Solid Waste Management Units (SWMUs), Areas of Concern (AOCs), or the areas contaminated by them, including voluntary corrective measures to the SWMUs or AOCs listed in Appendix A at the permitted facility as defined in 40 CFR 270.2 as adopted in 15A NCAC 13A .0113.

11.  Anticipated Noncompliance.  The Permittee shall give advance notice to the Department of any planned changes in the permitted facility or activity which may result in noncompliance with permit requirements.

12.  Transfer of Permits.  This permit may be transferred to a new owner or operator only if it is modified or revoked and reissued pursuant to 40 CFR 270.40, 270.41 and 270.42 as adopted in 15A NCAC 13A .0113. Before transferring ownership or operation of the facility during its operating life, the Permittee shall notify the new owner or operator in writing of the requirements of 40 CFR 264 as adopted in 15A NCAC 13A .0109 and 40 CFR 270 as adopted in 15A NCAC 13A .0113.

13.  Compliance Schedules.  Reports of compliance or noncompliance with, or any progress reports on, interim and final requirements contained in any compliance schedule of this permit shall be submitted no later than fourteen (14) days following each schedule date.

14.  Twenty-four Hour Reporting.  The Permittee shall report to the Department any noncompliance which may endanger health or the environment. Any information shall be provided orally within 24 hours from the time the Permittee becomes aware of the circumstances. The following shall be included as information which must be reported orally within 24 hours:

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

a. Information concerning release of any hazardous waste that may cause an endangerment to public drinking water supplies.

b. Any information of a release or discharge of hazardous waste, or of a fire or explosion from the facility, which could threaten the environment or human health outside the facility. The description of the occurrence and its cause shall include:

i. Name, address, and telephone number of the owner or operator;
ii. Name, address, and telephone number of the facility;
iii. Date, time, and type of incident;
iv. Name and quantity of material(s) involved;
v. The extent of injuries, if any;
vi. An assessment of actual or potential hazard to the environment and human health outside the facility, where this is applicable; and
vii. Estimated quantity and disposition of recovered material that resulted from the incident.

A written submission shall also be provided within five (5) days of the time the Permittee becomes aware of the circumstances. The written submission shall contain a description of the noncompliance and its cause; the periods of noncompliance (including exact dates and times), and if the noncompliance has not been corrected, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance. The Permittee need not comply with the five-day written notice requirement if the Department waives that requirement and the Permittee submits a written report within fifteen (15) days of the time the Permittee becomes aware of the circumstances.

15. <u>Other Noncompliance</u>. The Permittee shall report all other instances of noncompliance not otherwise required to be reported at the time monitoring reports are submitted. The reports shall contain the information listed in Condition I.D.14.

16. <u>Other Information</u>. When the Permittee becomes aware that he failed to submit any relevant facts in the permit application, or submitted incorrect information in a permit application or in any report to the Department, the Permittee shall promptly submit such facts or information.

E. <u>SIGNATORY REQUIREMENTS</u>

All reports or other information requested by the Department shall be signed and certified according to 40 CFR 270.11 as adopted in 15A NCAC 13A .0113.

F. <u>DOCUMENTS TO BE MAINTAINED AT FACILITY SITE</u>

1. The Permittee shall maintain at the facility, until closure is completed and certified by an independent registered professional engineer, the following documents and amendments, revisions and modifications to these documents:

a. Waste analysis plan submitted in accordance with 40 CFR 264.13 as adopted in 15A NCAC 13A .0109 and Section C of Attachment 1.

I-4

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

b.   Personnel training documents and records submitted in accordance with 40 CFR 264.16(d) as adopted in 15A NCAC 13A .0109 and Section H of Attachment 1.

c.   Contingency plan submitted in accordance with 40 CFR 264.53(a) as adopted in 15A NCAC 13A .0109 and Section G of Attachment 1.

d.   Closure plan submitted in accordance with 40 CFR 264.112(a) as adopted in 15A NCAC 13A .0109 and Section I of Attachment 1.

e.   Cost estimate for facility closure and corrective action submitted in accordance with 40 CFR 264.142(d) and 40 CFR 264.101 as adopted in 15A NCAC 13A .0109 and Attachment I-5 of Attachment 1.

f.   Operating record required by 40 CFR 264.73 as adopted in 15A NCAC 13A .0109 and Sections C, D, F, G, H, I and L of Attachment 1.

g.   Inspection schedules developed in accordance with 40 CFR 264.15(b) as adopted in 15A NCAC 13A .0109 and Section F of Attachment 1.

2.   The Permittee shall maintain at the facility, until corrective action is completed and certified by an independent registered professional engineer, the following documents and amendments, revisions and modifications to these documents:

a.   Samples and measurements taken for the purpose of monitoring shall be representative of the monitored activity.  The method used to obtain a representative sample of the waste to be analyzed must be an appropriate method or an equivalent method approved by the Department.  Laboratory methods must be those specified in the most recent edition of Test Methods for Evaluating Solid Waste: Physical/Chemical Methods, SW-846, or an equivalent method approved by the Department.

b.   The Permittee shall retain records of all monitoring information required under the terms of this permit (including all calibration and maintenance records and all original strip chart recordings for continuous monitoring instrumentation), records of all data used to prepare documents required by this permit, copies of all reports and records required by this permit, the certification required by 40 CFR 264.73(b)(9) as adopted in 15A NCAC 13A .0109, and records of all data used to complete the application for this permit for a period of at least three (3) years from the date of the sample, measurement, report or record, or until corrective action is completed, whichever date is later.  As a generator of hazardous waste, the Permittee shall retain on-site a copy of all notices, certifications, demonstrations, waste analysis data, and other documents produced pursuant to 40 CFR 268 as adopted in 15A NCAC 13A .0112 for at least five years from the date that the waste which is the subject of such documentation was last sent to on-site or off-site treatment, storage, or disposal, or until corrective action is completed, whichever date is later.  These periods may be extended by request of the Department at any time and are automatically extended during the course of any unresolved enforcement action regarding this facility.

c.   Records of monitoring information shall include:

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

i.   The date, exact place, and time of sampling or measurements;
ii.  The individual(s) who performed the sampling or measurements;
iii. The date(s) analyses were performed;
iv.  The individual(s) who performed the analyses;
v.   The analytical techniques or methods used; and
vi.  The results of such analyses.

All amendments, revisions and modifications to any plan or cost estimates required by this permit shall be submitted to the Department for approval and/or permit modifications.

G.  BIENNIAL REPORT

The Permittee shall prepare and submit a biennial report by March 1 of each even numbered year in accordance with 40 CFR 264.75 as adopted in 15A NCAC 13A .0109 and as required by the NC Hazardous Waste Section. The report must cover facility activities during the previous calendar year.

H.  MANIFEST SYSTEM

1.  The Permittee shall utilize the manifest system when receiving hazardous waste from off-site in accordance with 40 CFR 264.71 as adopted in 15A NCAC 13A .0109 unless the Permittee submits an un-manifested waste report in accordance with 40 CFR 264.76 as adopted in 15A NCAC 13A .0109.

2.  The Permittee shall report any manifest discrepancies in accordance with 40 CFR 264.72 as adopted in 15A NCAC 13A .0109.

I.  DOCUMENTS TO BE SUBMITTED PRIOR TO OPERATION

Reserved.

J.  DEFINITIONS

For purposes of this permit, terms used herein shall have the same meaning as those in the North Carolina Hazardous Waste Management Rules and Solid Waste Management Law unless this permit specifically provides otherwise; where terms are not defined in 15A NCAC 13A, G.S. 130A - Article 9, the permit, or United States Environmental Protection Agency guidance documents and publications, the meaning associated with such terms shall be defined by a standard dictionary reference or the generally accepted scientific or industrial meaning of the term.

Corrective Action shall be defined as all activities including activities conducted beyond the facility boundary, that are proposed or implemented to facilitate assessment, monitoring, and active or passive remediation of releases of hazardous waste or hazardous constituents to soil, groundwater, surface water, or the atmosphere associated with Hazardous Waste Management Units (HWMUs), Solid Waste Management Units (SWMUs), and/or Areas of Concern (AOCs) located at the facility or off-site, as required by 40 CFR 264.100 and 264.101 and adopted in 15A NCAC 13A .0109 or as otherwise required and specified by this permit.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

K.  CONFIDENTIAL INFORMATION

The Permittee may claim confidential any information required to be submitted by this permit in accordance with 40 CFR 270.12 as adopted in 15A NCAC 13A .0113.

L.  APPROVAL/DISAPPROVAL OF SUBMITTALS

The Department will review the workplans, reports, schedules, and other documents ("submittals") which require the Department's approval in accordance with the conditions of this permit. The Department will notify the Permittee in writing of any submittal that is disapproved, and the basis therefore. Condition I.M. shall apply only to submittals that have been disapproved and revised by the Department, or have been disapproved by the Department, then revised and resubmitted by the Permittee, and again disapproved by the Department.

M.  DISPUTE RESOLUTION

Notwithstanding any other provisions in this permit, in the event the Permittee disagrees, in whole or in part, with the Department's revision of a submittal or disapproval of any revised submittal required by the permit, the following may, at the Permittee's discretion, apply:

1.  In the event that the Permittee chooses to invoke the provisions of this section, the Permittee shall notify the Department in writing within thirty (30) days of receipt of the Department's revision of a submittal or disapproval of a revised submittal. Such notice shall set forth the specific matters in dispute, the position the Permittee asserts should be adopted as consistent with the requirements of the permit, the basis for the Permittee's position, and any matters considered necessary for the Department's determination.

2.  The Department and the Permittee shall have an additional thirty (30) days from the Department's receipt of the notification provided for in Condition I.M.1. to meet or confer to resolve any disagreement.

3.  In the event an agreement is reached, the Permittee shall submit the revised submittal and implement the same in accordance with and within the time frame specified in such agreement.

4.  If agreement is not reached within the thirty (30) day period, the Department will notify the Permittee in writing of his/her decision on the dispute, and the Permittee shall comply with the terms and conditions of the Department's decision in the dispute. For the purposes of this provision in this permit, the responsibility for making this decision shall not be delegated below the Chief of the Hazardous Waste Section.

Invoking any of the dispute resolution procedures of this section does not preclude the Permittee from exercising any of its other rights to petition for a contested case hearing or appeal in accordance with N.C. General Statute 150B. Nor does invoking any of the dispute resolution procedures of this section extend or delay the time periods in which the Permittee must exercise any of those other rights to petition or appeal.

5.  With the exception of those conditions under dispute, the Permittee shall proceed to take any action required by those portions of the submission and of the permit that the Department determines are not affected by the dispute.

I-7

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

N. SPECIAL CONDITION

Three years from August 7, 2012, the effective date of this permit, the permittee will cease acceptance of all wastes listed in Permit Condition II.A. and immediately begin closure of the storage and treatment units described in Parts III and IV of this Permit and all operating portions of the facility as outlined in Permit Condition II.O., Parts III and IV of this Permit and Section I of the attached application.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Detrex Corporation Permit

# PART II – GENERAL FACILITY CONDITIONS

A. Authorized Waste.  The Permittee is authorized to store and treat the following hazardous wastes or categories of hazardous waste in accordance with the conditions specified in this permit until August 6, 2015:

| Waste Codes | Treatment and Storage Units |
|---|---|
| F001, F002, F003, F004, F005, F006 | Container Storage (Areas #1 and #2) |
| D004, D005, D006, D007, D008, D009, D010, D011, D012, D013, D016, D018, D019, D020, D021, D022, D023, D024, D025, D026, D027, D028, D029, D032, D034, D035, D037, D038, D039, D040, D041, D042 | |
| U031, U037, U080, U112, U140, U154, U159, U161, U188, U210, U220, U226, U228, U239 | |
| K048, K049, K050, K051, K052, K085 | |
| F001, F002, F003, F004, F005, F006 | Container Storage (Area #3) |
| D004, D005, D006, D007, D008, D009, D010, D011, D012, D013, D016, D018, D019, D020, D021, D022, D023, D024, D025, D026, D027, D028, D029, D032, D034, D035, D037, D038, D039, D040, D041, D042 | |
| F001, F002, F003, F004, F005, F006 | Container Storage (Area #6) |
| U031, U037, U052, U080, U112, U140, U154, U159, U161, U188, U210, U220, U226, U228, U239 | |
| K048, K049, K050, K051, K052, K085 | |
| F001, F002 | 1,000-gallon Tank (Area #4) |
| D004, D005, D006, D007, D008, D009, D010, D011, D039, D040 | |
| U080, U210, U226, U228 | |
| F001, F002 | Distillation Unit (Area #5) |
| D004, D005, D006, D007, D008, D009, D010, D011, D039, D040 | |
| U080, U210, U226, U228 | |

II-1

| Waste Codes | Treatment and Storage Units |
|---|---|
| F001, F002, F003, F004, F005, F006<br><br>D004, D005, D006, D007, D008, D009, D010, D011,<br>D012, D013, D016, D018, D019, D020, D021, D022,<br>D023, D024, D025, D026, D027, D028, D029, D032,<br>D034, D035, D037, D038, D039, D040, D041, DC42<br><br>U031, U037, U052, U080, U112, U140, U154, U159,<br>U161, U188, U210, U220, U226, U228, U239<br><br>K048, K049, K050, K051, K052, K085 | Staging Area (Area #5) |

B. **Design and Operation of Facility.** The Permittee shall maintain and operate the facility to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste constituents to air, soil or surface water which could threaten human health or the environment.

C. **Required Notice for Receipt of Off-Site Wastes.**

    1.   The Permittee shall notify the Department in writing at least four (4) weeks in advance of the date the Permittee expects to receive hazardous waste from a source outside of the United States. Notice of subsequent shipments during the same calendar year of the same waste from the same foreign source is not required.

    2.   When the Permittee receives hazardous waste from an off-site source (except where the Permittee is also the generator), he must inform the generator in writing that he has the appropriate permit(s) for, and will accept, the waste the generator is shipping. The Permittee shall keep a copy of this written notice as part of the operating record.

D. **General Waste Analysis.** The Permittee shall follow the procedures described in the waste analysis plan as indicated in Section C of Attachment 1. A minimum of 10 percent or three (3) containers of each waste stream, whichever is greater, will be sampled for analysis. Each compartment of all bulk loads will be sampled for analysis. Each waste stream will also be verified by generator knowledge or analysis annually. Results of these analyses shall be maintained as per 40 CFR 264.13 as adopted in 15A NCAC 13A .0109 and as identified in Condition I.D.9. The Permittee shall verify the waste analysis as part of the quality assurance program. The quality assurance program will be in accordance with current EPA practices or equivalent methods approved by the Department, and at a minimum shall ensure that the Permittee maintains proper functional instruments, uses approved sampling and analytical methods, assures the validity of sampling and analytical procedures, and performs correct calculations.

E. **Security.** The Permittee shall comply with the security provisions of 40 CFR 264.14(b) and (c) as adopted in 15A NCAC 13A .0109 and Sections B and F of Attachment 1.

F. **General Inspection Requirements.** The Permittee shall follow the inspection schedule as described in Sections F and L of Attachment 1 and shall comply with 40 CFR 264.15(c) and (d) as adopted in 15A NCAC 13A .0109.

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

G. Personnel Training. The Permittee shall conduct personnel training in accordance with 40 CFR 264.16 as adopted in 15A NCAC 13A .0109 and as described in Section H of Attachment 1.

H. General Requirements for Ignitable, Reactive, or Incompatible Waste. The Permittee shall comply with the requirements of 40 CFR 264.17(a), (b) and (c) as adopted in 15A NCAC 13A .0109.

I. Required Equipment. The Permittee shall equip the facility and make readily available to operating personnel the necessary equipment to carry out the contingency plan, as described in Sections F and G of Attachment 1. At all times, the equipment requirement described in 40 CFR 264.32 as adopted in 15A NCAC 13A .0109 shall be met.

J. Testing and Maintenance of Equipment. The Permittee shall test and maintain the equipment specified in the previous permit condition and as identified in Sections F and G of Attachment 1 as necessary to ensure its proper operation in time of emergency.

K. Access to Communications or Alarm System. The Permittee shall maintain access to the communications or alarm system as required by 40 CFR 264.34 as adopted in 15A NCAC 13A .0109.

L. Contingency Plan.

1. Implementation of Plan. The Permittee shall immediately carry out the provisions of the contingency plan whenever there is a fire, explosion, or release of hazardous waste or constituents which threatens or could threaten human health or the environment as required by 40 CFR 264.56 as adopted in 15A NCAC 13A .0109.

2. Copies of Plan. The Permittee shall comply with the requirements of 40 CFR 264.53 as adopted in 15A NCAC 13A.

3. Amendments to Plan. The Permittee shall review and immediately amend, if necessary, the contingency plan, in accordance with 40 CFR 264.54 as adopted in 15A NCAC 13A .0109 and shall provide documentation that the groups listed in 40 CFR 264.53(b) have received the revised copy of the contingency plan.

4. Emergency Coordinator. The Permittee shall comply with the requirements of 40 CFR 264.55 as adopted in 15A NCAC 13A .0109, concerning the emergency coordinator.

M. Manifest System. The Permittee shall comply with the manifest requirements of 40 CFR 264.71, 264.72, and 264.76 as adopted in 15A NCAC 13A .0109.

N. Record-Keeping and Reporting.

1. Operating Record. The Permittee shall maintain a written operating record at the facility in accordance with 40 CFR 264.73(a), (b)(1), (2), (3), (4), (5), (6), (7), (8), (9), (11), (12), (15), (16), (17), and (19) as adopted in 15A NCAC 13A .0109 and described in Sections C, D, F, G, H, I, and L of Attachment 1.

2. Biennial Report. The Permittee shall comply with the biennial report requirements of 40 CFR 264.75 as adopted in 15A NCAC 13A .0109 and as amended by 15A NCAC 13A .0101(b)(3).

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

O. Closure.

1. Performance Standard. The Permittee shall close the facility in accordance with the closure plan as described in Section I of Attachment 1 and as required by 40 CFR 264.111 as adopted in 15A NCAC 13A .0109.

2. Amendment to Closure Plan. The Permittee shall amend the closure plan in accordance with 40 CFR 264.112(c) as adopted in 15A NCAC 13A .0109 whenever necessary.

3. Notification of Closure. The Permittee shall notify the Department in writing at least forty-five (45) days prior to the date he expects to begin closure.

4. Time Allowed For Closure. Within ninety (90) days after receiving the final volume of hazardous waste, the Permittee shall treat or remove from the site all hazardous waste in accordance with the schedule specified in the closure plan. After receiving the final volume of hazardous waste, the Permittee shall complete closure activities in accordance with the schedule specified in the closure plan in Section I of Attachment 1.

5. Disposal or Decontamination of Equipment. The Permittee shall comply with the requirements of 40 CFR 264.114 as adopted in 15A NCAC 13A .0109.

6. Certification of Closure. The Permittee shall certify that the facility has been closed in accordance with the specifications in the closure plan as required by 40 CFR 264.115 as adopted in 15A NCAC 13A .0109.

P. Cost Estimate for Facility Closure. The Permittee shall comply with the requirements of 40 CFR 264.142 as adopted in 15A NCAC 13A .0109, including the requirements to adjust and revise the cost estimates, when necessary. The Permittee's closure cost estimate is described in Attachment I-4 of Attachment 1.

Q. Financial Assurance for Facility Closure. The Permittee shall demonstrate continuous compliance with 15A NCAC 13A .0109(i) including 40 CFR 264.143 as adopted in 15A NCAC 13A .0109, or where applicable with 40 CFR 264.146, 264.149, 264.150, and 264.151 as adopted in 15A NCAC 13A .0109 by providing documentation of financial assurance in at least the amount of the cost estimates required by Condition II.P. and Attachment I-5 of Attachment 1.

The financial mechanism used shall be that instrument specified in Attachment I-5 of Attachment 1. The Permittee may propose using a different mechanism by submitting a new financial instrument to the Department for approval. The Permittee must submit this documentation no later than sixty (60) days prior to the effective date of the proposed change. The existing financial mechanism shall remain in force until the change is approved.

R. Liability Requirements. The Permittee shall comply with the requirements of 40 CFR 264.147 as adopted in 15A NCAC 13A .0109, including the requirements to have and maintain liability coverage for sudden and accidental occurrences in the amount of at least $1 million per occurrence with an annual aggregate of at least $2 million, exclusive of legal defense costs.

The financial mechanism used shall be that instrument specified in Attachment I-5 of Attachment 1. The Permittee may propose using a different mechanism by submitting a new financial instrument to the Department for approval. The Permittee must submit this documentation no later than sixty (60) days prior

to the effective date of the proposed change. The existing financial mechanism shall remain in force until the change is approved.

S. Incapacity of Owners or Operators, Guarantors, or Financial Institutions. The Permittee shall comply with 40 CFR 264.148 as adopted in 15A NCAC 13A .0109 whenever necessary.

T. Corrective Action. The Permittee shall perform corrective action as required in 40 CFR 264.100 and .101 as adopted in 15A NCAC 13A .0109 and the approved remedy in VIII.I of this permit.

U. Cost Estimate for Completion of Corrective Action.

1. The Permittee shall prepare a remedial strategy and a cost estimate for the completion of any corrective action required under this permit for solid waste management units in order to provide financial assurance for completion of corrective action as required under 40 CFR 264.90(a)(2) and 264.101(b) as adopted in 15A NCAC 13A .0109. The remedial strategy shall be a plan for remedies for the adversely impacted areas at the facility and beyond the facility boundary. The level of detail and specificity related to the remedial technologies being considered for the facility shall increase as the facility obtains more information through facility characterization. The cost estimate will be based upon the cost of assessment of soil and groundwater and the installation, operation, inspection, monitoring, and maintenance of the corrective action system for remediation of contaminated soil and/or groundwater to meet the requirements of 40 CFR 264.100 and 264.101 as adopted in 15A NCAC 13A .0109 and this permit. Such cost estimate will include the full cost (100%) of corrective action as defined by Part I.I of this permit.

2. The Permittee shall submit the remedial strategy and cost estimate for completion of corrective action required under 40 CFR 264.90(a)(2), 264.100 and 264.101 as adopted in 15A NCAC 13A .0109 and this permit within one hundred eighty (180) days of the effective date of this permit.

3. The Permittee shall annually adjust the cost estimate for inflation sixty (60) days prior to the anniversary date of the establishment of the financial assurance mechanism unless using a financial test or corporate guarantee, in which case the estimate shall be updated thirty (30) days after the close of the firm's fiscal year.

4. The Permittee shall submit cost adjustments for modifications to the corrective action plan to the Section within thirty (30) calendar days after receiving approval of the modification if the change increases the cost of corrective action.

V. Financial Assurance for Corrective Action.

1. The Permittee shall demonstrate continuous compliance with 40 CFR 264.90(a)(2) and 264.101 as adopted in 15A NCAC 13A .0109 by providing documentation of financial assurance using a mechanism described in 40 CFR 264.151 and 264.145 as adopted in 15A NCAC 13A .0109 or a mechanism described in 15A NCAC 13A .0109(i) in at least the amount of the cost estimate required under Condition II.U. or for an amount agreed upon by the Department.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

2. The Permittee shall submit financial assurance for the full cost of corrective action, or for an amount agreed upon by the Department, as required under 40 CFR 264.90(a)(2), 264.100 and 264.101 as adopted in 15A NCAC 13A .0109 no later than sixty (60) days after the approval of the cost estimate described in II.U of this permit.

3. Only the mechanisms described in 15A NCAC 13A .0109(i) may be used for financial assurance for corrective action. References to regulatory requirements for "closure and/or post-closure care" shall be replaced with the phrase "closure, post-closure care, and/or corrective action."

W. Local Government Input for Contingency Plan.

1. Ongoing Permit Requirements.

At each two year interval after the permit is issued the Permittee shall verify that the resources and equipment of each local government and emergency response agencies that have a role under the contingency plan for the facility are available and adequate to respond to an emergency at the facility in accordance with its role as set forth in the contingency plan. Documentation of the verification must be submitted to the Section on or before the two year anniversary date of the effective date of the permit.

The contact for the local government shall be the county manager in which the facility is located and the head of a municipality with planning jurisdiction over the site of the facility if one exists.

G.S 130A-295(d) – (g)

X. Special Conditions.

1. When a discrepancy exists between the wording of an item in Attachment 1 and this permit, the permit requirements take precedence over Attachment 1.

2. Where a discrepancy exists between the RCRA Facility Assessment (RFA) report (attached as part of the permit) and this permit as to the future requirements to be taken at the facility, the permit requirements take precedence over the requirements reflected in the report.

3. The Permittee shall comply with the Floodplain Regulations of Mecklenburg County and the Code of the City of Charlotte, Chapter 9 – the Floodplain Regulations of Charlotte North Carolina.

4. Any monitoring well installed for the purposes of corrective action whose head becomes submerged during a flood event must be redeveloped prior to the next sampling event.

## Part IIa – Commercial Facility Conditions

A. <u>General</u>

   The Permittee shall provide and maintain such appropriate and secure offices and laboratory facilities as the Department may require for the use of the resident inspectors required by GS 130A-295.02(a).

B. Off site information

   The Permittee shall maintain a record of information at an off-site location that identifies the generators of the waste and the quantity, type, location, and hazards of the waste at the facility and shall make this information available in a form and manner to be determined by the Department, accessible to the Department, to the county in which the facility is located, to any municipality with planning jurisdiction over the site of the facility, and to emergency response agencies that have a role under the contingency plan for the facility. G.S 130A-295.01(d)

C. Notification by Commercial Hazardous Waste Facility.

   1. The Permittee shall publish a notice annually beginning one year after the effective date of the permit. The notice shall be published in a form and manner approved by the Department in a newspaper of general circulation in the community where the facility is located. The notice shall include all of the following:

      a. The location of the facility.

      b. A description of the facility.

      c. The hazardous and nonhazardous wastes that are to be received and processed at the facility.

      d. A description of the emergency response plan for the facility.

   2. The Permittee shall provide the information set out in IIa.C.i.a. through d. of the permit by mail at the midpoint of the period for which the permit is issued to every person who resides or owns property located within one-fourth mile of any property boundary of the facility that the application has been filed.

   3. Within 30 days of each requirement the Permittee shall provide documentation to demonstrate to the Section that the requirements set out in IIa.C.1 through 2 of the permit have been met.

   G.S. 130A-295.01(e)

E. Changes to Surrounding Land Use

   No later than 31 January of each year, the Permittee shall report to the Section any increase or decrease in the number of sensitive land uses and any increase or decrease in estimated population density based on information provided by the local government that has planning jurisdiction over the site on which the facility is located that occurred during the previous calendar year in the area located within one-fourth mile of any property boundary of the facility. Changes shall be recorded in the operating record of the facility.
   G.S. 130A-295.01(f)

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

F.   24 Hour Security and Surveillance

The Permittee shall provide a security and surveillance system at the facility 24 hours a day, seven days a week in order to continuously monitor site conditions and to control entry. The security and surveillance system shall be capable of promptly detecting unauthorized access to the facility; monitoring conditions; identifying operator errors; and detecting any discharge that could directly or indirectly cause a fire, explosion, or release of hazardous waste or hazardous waste constituents into the environment or threaten human health.
G.S. 130A-295.01(g)

G.   On-site wind monitor

The Permittee shall install and maintain an on-site wind monitor approved by the Department. The wind monitor required shall be located so that the real-time wind direction can be determined from a remote location in the event of a release of hazardous waste or hazardous waste constituents into the environment.
G.S. 130A-295.01(g)

H.   Special Condition

The permit conditions in Part IIa will remain in effect until the closure of the commercial treatment, storage and disposal facility required by permit condition I.N is certified as complete.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Detrex Corporation Permit

## PART III - STORAGE/TREATMENT IN CONTAINERS

| Unit Name | Type of Unit | Wastes Managed in Units | Maximum Capacity (gallons) | Size (square feet) |
|---|---|---|---|---|
| Area #1 | Container Storage | F001, F002, F003, F004, F005, F006 D004, D005, D006, D007, D008, D009, D010, D011, D012, D013, D016, D018, D019, D020, D021, D022, D023, D024, D025, D026, D027, D028, D029, D032, D034, D035, D037, D038, D039, D040, D041, D042 U031, D037, U052, U080, U112, U140, U154, U159, U161, U188, U210, U220, U226, U228, U239 K048, K049, K050, K051, K052, K085 | 8,850 | 1,431 |
| Area #2 | Container Storage | F001, F002, F003, F004, F005, F006 D004, D005, D006, D007, D008, D009, D010, D011, D012, D013, D016, D018, D019, D020, D021, D022, D023, D024, D025, D026, D027, D028, D029, D032, D034, D035, D037, D038, D039, D040, D041, D042 U031, C052, U080, C112, C140, C154, C159, C103, C188, C210, C220, C226, C228, C239 K048, K049, K050, K051, K052, K085 | 6,600 | 1,360 |
| Area #3 | Container Storage | F001, F002, F003, F004, F005, F006 D004, D005, D006, D007, D008, D009, D010, D011, D012, D013, D016, D018, D019, D020, D021, D022, D023, D024, D025, D026, D027, D028, D029, D032, D034, D035, D037, D038, D030, D040, D041, D042 | 4,400 | 596 |

III-1

| Unit Name | Type of Unit | Wastes Managed in Units | Maximum Capacity (gallons) | Size (square feet) |
|-----------|--------------|-------------------------|----------------------------|---------------------|
| Area #6 | Container Storage in Tractor Trailers | F001, F002, F003, F004, F005, F006<br>D001, D004, D005, D006, D007, D008, D009, D010, D011, D012, D013, D016, D018, D019, D020, D021, D022, D023, D024, D025, D026, D027, D028, D029, D032, D034, D035, D037, D038, D039, D040, D041, D042<br>U031, U037, U052, U080, U112, U140, U154, U159, U161, U188, U210, U220, U226, U228, U239<br>K048, K049, K050, K051, K052, K085 | 6,600 | 352 |

Area #5 contains the distillation unit and will be used for staging hazardous waste prior to the waste being placed into storage. The maximum amount of waste which may be staged at any one time is 5,280 gallons.

Areas #1, #2, #3 and #5 are inside the building located at 3114 Cullman Avenue. The units consist of the original concrete slab floor with 4 inch thick, 3-1/2 inch high concrete curbing providing the secondary containment. Each containment area will be coated with an impervious coating as specified in D-1a(1) in Attachment 1.

Area #6 is the loading dock area between 3114 and 3124 Cullman Avenue. The hazardous waste will be stored in two tractor trailers parked at the loading dock. Each tractor trailer will be designed with a metal plate which forms a pan having the dimensions of the interior of the trailer. Specifications for the pan are given in Section D-1a(1) of Attachment 1.

Wastes which may be stored in these units are specified in Condition II.A of this permit.

A.  Condition of Containers. If a container holding hazardous waste is not in good condition (e.g., severe rusting, apparent structural defects) or if it begins to leak, the Permittee shall transfer the hazardous waste from such container to a container that is in good condition or manage the waste in some other way that complies with the requirements of this permit.

B.  Compatibility of Waste with Containers. The Permittee shall comply with 40 CFR 264.172 as adopted in 15A NCAC 13A .0109 and ensure that the ability of the container to contain the waste is not impaired.

C.  Management of Containers. The Permittee shall manage containers in accordance with 40 CFR 264.173 as adopted in 15A NCAC 13A .0109 and as described in Section D of Attachment 1. Containers will be placed on pallets except in Area #6. 55-gallon containers and non-bulk (85-gallon overpack drums or smaller) containers may be stacked two high except in Area #5 where containers shall not be stacked. Totes (300-gallon to 550-gallon containers) shall be stacked only when empty. Containers smaller than 55 gallons shall be stacked to a height not to exceed 45 inches on a pallet. Pallets of smaller containers may be stacked two high as long as the containers on the underlying pallet are all the same size.

III-2

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

D.  Inspections.  The Permittee shall inspect container storage areas in accordance with 40 CFR 264.174 as adopted in 15A NCAC 13A .0109 and as described in Sections F and L of Attachment 1.

E.  Aisle Space.  At a minimum, the Permittee shall maintain aisle space as required by 40 CFR 264.35 as adopted in 15A NCAC 13A .0109. A minimum aisle space of twenty-four (24) inches between rows of pallets of containers or double rows of containers shall be maintained at all times.

F.  Containment.  The Permittee shall comply with the requirements of a containment system found in 40 CFR 264.175(b)(1)-(5) as adopted in 15A NCAC 13A .0109, including having a base which is free of cracks and gaps and is able to contain leaks, spills and accumulated rainfall until such time that the material is detected and removed.  The containment system must be designed for efficient drainage and have sufficient capacity to contain 10% of the total volume of containers.  The Permittee shall maintain the containment system in accordance with Section D of Attachment 1.

G.  Special Requirements for Ignitable or Reactive Waste.  The Permittee shall not locate containers holding ignitable or reactive waste within 200 feet of the facility's property line in accordance with 51A NCAC 13A .0109 (r)(2)d.

H.  Special Requirements for Incompatible Waste.

    1.  The Permittee shall not place incompatible wastes in the same container.

    2.  The Permittee shall not place hazardous waste in an unwashed container that previously held an incompatible waste or material.

    3.  The Permittee shall not store a container of hazardous waste that is incompatible with any waste or material stored nearby in other containers, piles, open tanks or surface impoundments unless the container is separated from the other materials by a dike, berm, wall, or other device.

I.  Closure.  Closure of the units described in Permit Condition III will begin on August 6, 2015.  The Permittee shall follow the closure plan as described in Section I of Attachment 1 and shall comply with 40 CFR 264.178 as adopted in 15A NCAC 13A .0109.

J.  Reporting Requirement.

    1.  Within thirty (30) days of the effective date of this permit, the Permittee must submit a report documenting the application of the new sealant or repair of the existing sealant noted in the "Revised Report of Assessment of Floor and AST Integrity" dated April 17, 2009.

K.  Special Conditions.

    1.  A minimum aisle space of twenty-four (24) inches between rows of pallets of containers or double rows of containers shall be maintained at all times.

    2.  At the first sign of a potential flood event and at the end of each work day, the Permittee will ensure that all containers are double stacked in accordance with Permit Condition III.C and Attachment G-7 of the Application.

    3.  At the first sign of a potential flood event and at the end of each work day, the Permittee will ensure that the trailer doors in Area #6 are

Case 3:21-cv-00458-KDB-DSC   Document 1378-18   Filed 03/21/22   Page 22 of 48

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

closed and locked and the trailers will be secured to the docking area
by a manner of tie-down agreed upon by the Permittee and the
Department. The manner of tie-down shall be decided upon and
implemented by the effective date of this Permit.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

# PART IV - STORAGE/TREATMENT IN TANKS

The 1,000-gallon feed tank is an aboveground, vertical, cone bottom, 12 gauge T304 stainless steel tank with a 20" diameter steel manway. The tank will be used to store and treat chlorinated solvents as listed in Condition II-A of this permit. The tank is located in Area #4 within the building at 3114 Cullman Avenue. The tank is supported by four 3'-long legs and is of 5'-4" in diameter with a height of 6'. The tank shall be fitted with fill lines as specified in Section D-2 of Attachment 1.

Waste is pumped directly into the tank from containers or tanker trucks. The tank shall be operated at ambient pressure and temperature. Waste is then pumped directly to the LUWA distillation unit through a permanent piping system. The tank is also fitted with level indicators and high level alarms as specified in Section D-2d of Attachment 1 to prevent over filling.

The secondary containment (Area #4) consists of the original concrete slab floor with the addition of 4" wide by 3-1/2" high curbs. The concrete is coated with an impervious coating as specified in D-1a(1) in Attachment 1. The secondary containment's capacity is 1,039.5 gallons, or 103.9 % of the tank located within the containment area.

The LUWA distillation unit is tank-like with a holding capacity of 55 gallons and a treatment capacity of 100 gallons per hour. It is used to treat the solvents stored in the 1,000-gallon feed tank. The LUWA is connected to the feed tank via overhead pipes. It is equipped with both automatic and manual valves to regulate the flow of waste to the unit. It is located in Area #5. This secondary containment consists of the original concrete slab floor with the addition of 4" wide by 3-1/2" high curbs. The concrete will be coated with an impervious coating as specified in D-1a(1) in Attachment 1. The secondary containment's capacity is 7,763 gallons, or 267% of the LUWA located with the secondary containment.

A. Design of Tanks.
The Permittee shall maintain all tanks in accordance with Section D of Attachment 1.

B. Secondary Containment and Integrity Assessments.

1. The Permittee shall comply with 40 CFR 264.193(b)-(f) as adopted in 15A NCAC 13A .0109 and design, construct, and operate the secondary containment system in accordance with the detailed design plans described in Section D of Attachment 1.

C. General Operating Requirements.

1. The Permittee shall not place hazardous wastes or treatment reagents in the tank system if they could cause the tank, its ancillary equipment, or a containment system to rupture, leak, corrode, or otherwise fail.

2. The Permittee shall prevent spills and overflows from the tank or containment systems using the methods described in 40 CFR 264.194(b) as adopted in 15A NCAC 13A .0109 and in Section D of Attachment 1.

D. Response to Leaks or Spills.

In the event of a leak or a spill from the tank and/or secondary containment system, or if a system becomes unfit for continued use, the Permittee shall

Case 3:21-cv-00458-KDB-DSC   Document 1378-18   Filed 03/21/22   Page 24 of 48

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

comply with 40 CFR 264.196 as adopted in 15A NCAC 13A .0109 and remove the system from service immediately and complete the following actions:

1. Stop the flow of hazardous waste into the system and inspect the system to determine the cause of the release;

2. Remove the waste and accumulated precipitation from the system within twenty-four (24) hours of the detection of the leak to prevent further release and to allow inspection and repair of the system. If the Permittee finds that it will be impossible to meet this time period, the Permittee must notify the Department and demonstrate that the longer time period is required;

3. Contain visible releases to the environment. The Permittee shall immediately conduct a visual inspection of all releases to the environment and based on that inspection: (a) prevent further migration of the leak or spill to soils or surface water and (b) remove and properly dispose of any visible contamination of the soil or surface water;

4. Close the system in accordance with the closure plan as described on Section I of Attachment 1, unless the following actions are taken:

    a. For a release caused by a spill that has not damaged the integrity of the system, the Permittee shall remove the released waste and make any necessary repairs of the system before returning the tank system to service;

    b. For a release caused by a leak from the primary tank system to the secondary containment system, the Permittee shall repair the primary system prior to its return to service;

    c. For a release to the environment caused by a leak from a component of the tank system that is below ground and does not have secondary containment, the Permittee must provide this component with secondary containment that meets the requirements of 40 CFR 264.193 as adopted in 15A NCAC 13A .0109 before the component can be returned to service;

    d. For a release to the environment caused by a leak from the aboveground portion of the tank system that does not have secondary containment, and can be visually inspected, the Permittee shall repair the tank system before its return to service;

    e. For a release to the environment caused by a leak from the portion of the tank system component that is not readily available for visual inspection, the Permittee shall provide secondary containment that meets the requirements of 40 CFR 264.193 as adopted in 15A NCAC 13A .0109 before the component can be returned to service;

    f. If the Permittee replaces a component of the tank system to eliminate the leak, that component must satisfy the requirements for new tank systems or components in 40 CFR 264.192 and 264.193 as adopted in 15A NCAC 13A .0109.

5. For all major repairs to eliminate leaks or restore the integrity of the tank system, the Permittee must obtain a certification by an independent, qualified, registered professional engineer that the repaired system is capable of handling hazardous wastes without release

for the intended life of the system before returning the system to service.

E.   Inspections.

   1.   The Permittee shall inspect the tank systems in accordance with 40 CFR 264.195 as adopted in 15A NCAC 13A .0109 and the inspection schedule in Section F of Attachment 1.  The Permittee shall also develop and follow a procedure for inspecting overfill controls.

   2.   The Permittee shall inspect the following components of the tank system once each operating day:

      a.   Aboveground portions of the tank system, if any, to detect corrosion or releases of waste;

      b.   Data gathered from monitoring and leak detection equipment (e.g. pressure or temperature gauges, monitoring wells) to ensure that the tank system is being operated according to its design; and

      c.   The area immediately surrounding the externally accessible portion of the tank system, including the secondary containment system, to detect erosion or signs of releases of hazardous waste.

   3.   The Permittee shall inspect cathodic protection systems, in accordance with 40 CFR 264.195(c) as adopted in 15A NCAC 13A .0109 and the following schedule:

      a.   The proper operation of the cathodic protection system must be confirmed within six (6) months from initial installation and annually thereafter; and

      b.   All sources of impressed current must be inspected and tested every other month.

   4.   The Permittee shall document compliance with Conditions IV.E.2. and IV.E.3. and place this documentation in the operating record for the facility.

F.   Notifications and Recordkeeping.

   1.   The Permittee shall report to the Department within twenty-four (24) hours of detection when a leak or spill occurs from the tank or secondary containment system to the environment as described in 40 CFR 264.196(d)(1) as adopted in 15A NCAC 13A .0109.

   2.   Within thirty (30) days of release detection, the Permittee shall report to the Department the information in 40 CFR 264.196(d)(3) as adopted in 15A NCAC 13A .0109.

   3.   The Permittee shall submit to the Department all certifications of major repairs to correct leaks within seven (7) days from returning the tank system to use.

   4.   The Permittee shall obtain and keep on file at the facility the written statements by those persons required to certify the design and installation of the tank system as required by 40 CFR 264.192(g) as adopted in 15A NCAC 13A .0109.

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

5. The Permittee shall keep on file at the facility the written assessment of the tank systems' integrity as required by 40 CFR 264.191(a) as adopted in 15A NCAC 13A .0109.

G. Closure and Post-Closure Care.

1. Closure of the units described in Permit Condition IV will begin on August 12, 2015. The Permittee shall follow the closure plan as described in Section I of Attachment 1 and shall comply with 40 CFR 264.197 as adopted in 15A NCAC 13A .0109.

2. If the Permittee demonstrates that not all contaminated soils can be practicably removed or decontaminated in accordance with the closure plan, then the Permittee shall close the tank system(s) and submit a post-closure plan in accordance with 40 CFR 264.197(b) and (c) as adopted in 15A NCAC 13A .0109.

H. Special Requirements for Ignitable or Reactive Wastes.

1. The Permittee shall not place ignitable or reactive waste in a tank.

2. The Permittee shall comply with the requirements of 40 CFR 264.198(b) as adopted in 15A NCAC 13A .0109.

I. Special Requirements for Incompatible Wastes.

1. The Permittee shall not place incompatible wastes in the same tank.

2. The Permittee shall not place hazardous waste in an unwashed tank which previously held an incompatible waste or material.

J. Special Conditions.

1. The Permittee must document each inspection during the unloading of bulk loads into the feed tanks in the operating record per the requirements of 40 CFR 264.15 as adopted in 15A NCAC 13A .0109.

2. At the first sign of a potential flood event and at the end of each work day, the Permittee will ensure that the Feed Tank in Area #4 is at least one third full as specified in Figure G-7 of the Application.

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

V-1

PART V – RESERVED

Detrex Corporation Permit

VII-1

PART VII – RESERVED

Detrex Corporation Permit

# PART VIII - CORRECTIVE ACTION FOR SOLID WASTE MANAGEMENT UNITS (SWMUs) AND AREAS OF CONCERN (AOCs)

The purpose of this section is to provide the facility direction to:

1) perform a RCRA Facility Investigation to determine fully the nature and extent of any release of hazardous waste and/or hazardous constituents at or from the Facility;

2) perform a Corrective Measures Study to identify and evaluate alternatives for the corrective measures necessary to prevent, mitigate, and/or remediate any releases of hazardous wastes or hazardous constituents at or from the Facility;

3) implement the corrective measure or measures selected by the Facility and approved by the State; and

4) perform any other activities necessary to correct or evaluate actual or potential threats to human health and/or the environment resulting from the release or potential release of hazardous waste or hazardous constituents at or from the Facility.

It is understood that some of the information that is required in this Section has either been submitted or is in process.

A.  APPLICABILITY

The Conditions of this Part apply to:

1.  The solid waste management units (SWMUs) and areas of concern (AOCs) identified in Appendix A of the permit, which require a RCRA Facility Investigation (RFI).

2.  The SWMUs and AOCs identified in Appendix A which require no further investigation at this time or are addressed under the permit.

3.  The SWMUs and AOCs identified in Appendix A which require confirmatory sampling.

4.  Any additional SWMUs or AOCs discovered during the course of ground-water monitoring, field investigations, environmental audits, or other means.

5.  Contamination beyond the facility boundary, if necessary.  The Permittee shall implement corrective actions beyond the facility boundary where necessary to protect human health and the environment, unless the Permittee demonstrates to the satisfaction of the Department that, despite the Permittee's best efforts, as determined by the Department, the Permittee was unable to obtain the necessary permission to undertake such actions.  The Permittee is not relieved of all responsibility to clean up a release that has migrated beyond the facility boundary where off-site access is denied.  On-site measures to address such releases will be determined on a case-by-case basis.  Assurances of financial responsibility for completion of such off-site corrective action will be required.

6.  The Permittee may deviate from the Conditions of this Part by performing self-directed corrective action with approval from the Director.  The

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Permittee shall sign an agreement specifying conditions of self-directed corrective action which includes reporting requirements and an implementation schedule.  If, in the sole discretion of the Director, the Permittee is determined to have failed to abide by the negotiated conditions and schedule in this agreement, the Permittee will be required to follow the Conditions of this Part.

B.  DEFINITIONS

For purposes of this Part, the following definitions shall be applicable:

1.  The term "area of concern" (AOC) includes any area having a probable release of a hazardous waste or hazardous constituent which is not from a solid waste management unit and is determined by the Department to pose a current or potential threat to human health or the environment. Such areas of concern may require investigations and remedial action as required under Section 3005 (c)(3) of the Resource Conservation and Recovery Act and 40 CFR 270.32 (b)(2) as adopted in 15A NCAC 13A .0113 in order to insure adequate protection of human health and the environment.

2.  Corrective Action shall be defined as all activities including activities conducted beyond the facility boundary, that are proposed or implemented to facilitate assessment, monitoring, and active or passive remediation of releases of hazardous waste or hazardous constituents to soil, groundwater, surface water, or the atmosphere associated with Hazardous Waste Management Units (HWMUs), Solid Waste Management Units (SWMUs), and/or Areas of Concern (AOCs) located at the facility or off-site, as required by 40 CFR 264.100 and 264.101 and adopted in 15A NCAC 13A .0109 or as otherwise required and specified by this permit.

3.  A "Corrective Action Management Unit" (CAMU) includes any area within a facility that is designated by the Department under part 264 Subpart S, for the purpose of implementing corrective action requirements under 40 CFR 264.101 as adopted in 15A NCAC 13A .0109 and RCRA section 3008(h). A CAMU shall only be used for the management of remediation wastes pursuant to implementing such corrective action requirements at the facility.

4.  "Corrective measures" include all corrective action necessary to protect human health and the environment for all releases of hazardous waste or hazardous constituents from any area of concern or solid waste management unit at the facility, regardless of the time at which waste was placed in the unit, as required under 40 CFR 264.101 as adopted by 15A NCAC 13A .0109.  Corrective measures may address releases to air, soils, surface water or ground water.

5.  "Extent of contamination" is defined as the horizontal and vertical area in which the concentrations of the hazardous constituents in the environmental media are above detection limits or background concentrations indicative of the region, whichever is appropriate as determined by the Department.

6.  "Facility" includes all contiguous land, and structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of hazardous waste.  A facility may consist of several treatment, storage, or disposal operational units (e.g. one or more landfills, surface impoundments, or combination of them).  For the purposes of implementing corrective action under 40 CFR 264.101 as adopted in 15A NCAC 13A .0109, a facility includes all contiguous

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

property under the control of the owner or operator seeking a permit under Subtitle C of RCRA.

7.  A "hazardous constituent" for the purposes of this Part are those substances listed in 40 CFR Part 261 Appendix VIII as adopted in 15A NCAC 13A .0106 or 40 CFR 264 Appendix IX as adopted in 15A NCAC 13A .0109.

8.  "Interim Measures" are actions necessary to minimize or prevent the further migration of contaminants and limit actual or potential human and environmental exposure to contaminants while long-term corrective action remedies are evaluated and, if necessary, implemented.

9.  The term "land disposal" means placement in or on the land except for a CAMU and includes, but is not limited to, placement in a landfill, surface impoundment, waste pile, injection well, land treatment facility, salt dome formation, underground mine or cave, or concrete vault or bunker intended for disposal purposes.

10. "Landfill" includes any disposal facility or part of a facility where waste is placed in or on the land and which is not a pile, a land treatment facility, a surface impoundment, an underground injection well, a salt dome formation, a salt bed formation, an underground mine, a cave, or a corrective action management unit.

11. A "release" for purposes of this Part includes any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment of any hazardous waste or hazardous constituents.

12. "Remediation waste" includes all solid and hazardous wastes, and all media (including ground water, surface water, soils, and sediments) and debris, which contain listed hazardous wastes or which themselves exhibit a hazardous waste characteristic, that are managed for the purpose of implementing corrective action requirements under 40 CFR 264.101 as adopted in 15A NCAC 13A .0109 and RCRA section 3008 (h). For a given facility, remediation wastes may originate only from within the facility boundary, but may include waste managed in implementing RCRA sections 3004 (v) or 3008 (h) for releases beyond the facility boundary.

13. The term "solid waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semi-solid, or contained gaseous material resulting from industrial, commercial, mining and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges that are point sources subject to permits under Section 402 of the Federal Water Pollution Control Act, as amended (86 Stat. 880), or source, special nuclear, or by-product material as defined by the Atomic Energy Act of 1954, as amended (68 Stat. 923).

14. A "solid waste management unit" (SWMU) for the purposes of this Part includes any unit which has been used for the treatment, storage, or disposal of solid waste at any time, irrespective of whether the unit is or ever was intended for management of solid waste. RCRA regulated hazardous waste management units are also solid waste management units. Solid Waste Management Units include areas which have become contaminated by routine and systematic releases of hazardous waste or hazardous constituents, excluding one-time accidental spills that are

immediately remediated and cannot be linked to solid waste management activities (e.g., product or process spills).

15. A "Temporary Unit" (TU) includes any temporary tanks and/or container storage areas used solely for treatment or storage of hazardous remediation wastes during specific remediation activities. Designated by the Department, such units must conform to specific standards, and may only be in operation for a period of time as specified in this permit.

16. A "unit" for the purposes of this Part includes, but is not limited to, any landfill, surface impoundment, waste pile, land treatment unit, incinerator, injection well, tank, container storage area, septic tank, drain field, waste water treatment unit, elementary neutralization unit, transfer station, or recycling unit.

C. NOTIFICATION AND ASSESSMENT REQUIREMENTS FOR NEWLY IDENTIFIED SWMUs AND AOCs

1. The Permittee shall notify the Department in writing, within fifteen (15) calendar days of discovery, of any additional SWMUs as discovered under Condition VIII.A.4.

2. The Permittee shall notify the Department in writing, within fifteen (15) calendar days of discovery, of any Areas of Concern (AOCs) as discovered under Condition VIII.A.4. The notification shall include, at a minimum, the location of the AOC and all available information pertaining to the nature of the release (e.g., media affected, hazardous constituents released, magnitude of release, etc.). If the Department determines that further investigation of an AOC is required, the Permittee shall be required to prepare a plan for such investigations as outlined in Condition VIII.E.1. or Condition VIII.F.1.

3. The Permittee shall prepare and submit to the Department, within ninety (90) calendar days of notification, a SWMU Assessment Report (SAR) for each SWMU identified under Condition VIII.C.1. At a minimum, the SAR shall provide the following information:

   a. Location of unit(s) on a topographic map of appropriate scale such as required under 40 CFR 270.14(b)(19) as adopted in 15A NCAC 13A .0113.

   b. Designation of type and function of unit(s).

   c. General dimensions, capacities and structural description of unit(s) (supply any available plans/drawings).

   d. Dates that the unit(s) was operated.

   e. Specification of all wastes that have been managed at/in the unit(s) to the extent available. Include any available data on hazardous constituents in the waste.

   f. All available information pertaining to any release of hazardous waste or hazardous constituents from such unit(s) (to include ground-water data, soil analyses, air, and/or surface water data).

4. Based on the data in the SAR, the Department shall determine the need for further investigations at the SWMUs covered in the SAR. If the Department determines that such investigations are needed, the Permittee

VIII-4

Received for Filing Oakland County Clerk   6/7/2017 2:42 PM

shall be required to prepare a plan for such investigations as outlined in Condition VIII.E.1. or VIII.F.1.

D. NOTIFICATION REQUIREMENTS FOR NEWLY DISCOVERED RELEASES AT PREVIOUSLY IDENTIFIED SWMUs AND AOCs

1. The Permittee shall notify the Department in writing of any newly discovered release(s) of hazardous waste or hazardous constituents discovered during the course of ground-water monitoring, field investigations, environmental audits, or other means, within fifteen (15) calendar days of discovery. Such newly discovered releases may be from SWMUs or AOCs identified in Condition VIII.A.2. or SWMUs or AOCs identified in Condition VIII.A.3.

2. If the Department determines that further investigation of the SWMUs or AOCs is needed, the Permittee shall be required to prepare a plan for such investigations as outlined in Condition VIII.F.1.b.

E. CONFIRMATORY SAMPLING (CS)

1. The Permittee shall prepare and submit to the Department, within forty-five (45) calendar days of the effective date of the permit or notification by the Department for a newly identified SWMU, a Confirmatory Sampling (CS) Workplan to determine any release from SWMUs and AOCs identified in Condition VIII.A.3. and Appendix A. The CS Workplan shall include schedules of implementation and completion of specific actions necessary to determine a release. It should also address applicable requirements and affected media.

2. The CS Workplan must be approved by the Department, in writing, prior to implementation. The Department shall specify the start date of the CS Workplan schedule in the letter approving the CS Workplan. If the Department disapproves the CS Workplan, the Department shall either (1) notify the Permittee in writing of the CS Workplan's deficiencies and specify a due date for submission of a revised CS Workplan, or (2) revise the CS Workplan and notify the Permittee of the revisions, or (3) conditionally approve the CS workplan and notify the Permittee of the conditions.

3. The Permittee shall implement the confirmatory sampling in accordance with the approved CS Workplan.

4. The Permittee shall prepare and submit to the Department in accordance with the approved schedule, a Confirmatory Sampling (CS) Report, within sixty (60) calendar days after approval of the CS Workplan, identifying those SWMUs and AOCs listed in Condition VIII.A.3. that have released hazardous waste or hazardous constituents into the environment. The CS Report shall include all data, including raw data, and a summary and analysis of the data that support the above determination.

5. Based on the results of the CS Report, the Department shall determine the need for further investigations at the SWMUs and AOCs covered in the CS Report. If the Department determines that such investigations are needed, the Permittee shall be required to prepare a plan for such investigations as outlined in Condition VIII.F.1.b. The Department will notify the Permittee of any "no further action" decision.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

F.   RCRA FACILITY INVESTIGATION (RFI)

1.   RFI Workplan(s)

   a.   The Permittee shall prepare and submit to the Department, within
        ninety (90) calendar days of the approval of the Confirmatory
        Sampling Report, a RCRA Facility Investigation (RFI) Workplan for
        those units identified in Condition VIII.A.1.  This Workplan shall
        be developed to meet the requirements of Condition VIII.F.1.c.

   b.   The Permittee shall prepare and submit to the Department, within
        ninety (90) calendar days of notification by the Department, an RFI
        Workplan for those units identified under Condition VIII.C.4.,
        Condition VIII.D.2. or Condition VIII.E.5.  This RFI Workplan(s)
        shall be developed to meet the requirements of Condition
        VIII.F.1.c.

   c.   The RFI Workplan(s) shall meet the requirements of Appendix B at a
        minimum.  The Workplan(s) shall include schedules of implementation
        and completion of specific actions necessary to determine the
        nature and extent of releases and the potential pathways of
        contaminant releases to the air, land, surface water, and ground
        water.  The Permittee must provide sufficient justification and/or
        documentation that a release is not probable if a unit or a
        media/pathway associated with a unit (ground water, surface water,
        soil, subsurface gas, or air) is not included in the RFI
        Workplan(s).  Such deletions of a unit, media or pathway from the
        RFI(s) are subject to the approval of the Department.  The
        Permittee shall provide sufficient written justification for any
        omissions or deviations from the minimum requirements of Appendix
        B.  Such omissions or deviations are subject to the approval of the
        Department.  The RFI Workplan may be phased to allow for subsequent
        investigatory activity to be contingent upon the initial phase
        findings.  If the scope of the Workplan(s) is designed to be an
        initial phase, the initial phase must summarize all potential final
        phase activities needed to meet the requirements of this condition.
        In addition, the scope of the RFI Workplan(s) shall include all
        investigations necessary to ensure compliance with 40 CFR
        264.101(c) as adopted in 15A NCAC 13A .0109.

   d.   The RFI Workplan(s) must be approved by the Department, in writing,
        prior to implementation.  The Department shall specify the start
        date of the RFI Workplan schedule in the letter approving the RFI
        Workplan(s).  If the Department disapproves the RFI Workplan(s),
        the Department shall either (1) notify the Permittee in writing of
        the RFI Workplan's deficiencies and specify a due date for
        submission of a revised RFI Workplan, or (2) revise the RFI
        Workplan and notify the Permittee of the revisions and the start
        date of the schedule within the approved RFI Workplan, or (3)
        conditionally approve the RFI workplan and notify the Permittee of
        the conditions.

2.   RFI Implementation

   The Permittee shall implement the RFI(s) in accordance with the approved
   RFI Workplan(s) and Appendix B.  The Permittee shall notify the
   Department twenty (20) days prior to any sampling activity.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

3. RFI Reports

    a. If the time required to conduct the RFI(s) is greater than one hundred eighty (180) calendar days, the Permittee shall provide the Department with quarterly RFI Progress Reports (90 day intervals) beginning ninety (90) calendar days from the start date specified by the Department in the RFI Workplan approval letter. The Progress Reports shall contain the following information at a minimum:

        i. A description of the portion of the RFI completed;

        ii. Summaries of findings;

        iii. Summaries of any deviations from the approved RFI Workplan during the reporting period;

        iv. Summaries of any significant contacts with local community public interest groups or state government;

        v. Summaries of any problems or potential problems encountered during the reporting period;

        vi. Actions taken to rectify problems;

        vii. Changes to relevant personnel;

        viii. Projected work for the next reporting period; and

        ix. Copies of daily reports, inspection reports, laboratory/monitoring data, etc.

    b. The Permittee shall prepare and submit to the Department Draft and Final RCRA Facility Investigation Report(s) for the investigations conducted pursuant to the Workplan(s) submitted under Condition VIII.F.1. The Draft RFI Report(s) shall be submitted to the Department for review in accordance with the schedule in the approved RFI Workplan(s). The Final RFI Report(s) shall be submitted to the Department within thirty (30) calendar days of receipt of the Department's comments on the Draft RFI Report. The RFI Report(s) shall include an analysis and summary of all required investigations of SWMUs and AOCs and their results. The summary shall describe the type and extent of contamination at the facility, including sources and migration pathways, and a description of actual or potential receptors. The Report(s) shall also describe the extent of contamination (qualitative/quantitative) in relation to background levels indicative of the area. If the Draft RFI Report is a summary of the initial phase investigatory work, the report shall include a workplan for the final phase investigatory actions required based on the initial findings. Approval of the final phase workplan shall be carried out in accordance with Condition VIII.F.1.d. The objective of this task shall be to ensure that the investigation data are sufficient in quality (e.g., quality assurance procedures have been followed) and quantity to describe the nature and extent of contamination, potential threat to human health and/or the environment, and to support a Corrective Measures Study, if necessary.

    c. The Department will review the Final RFI Report(s) and notify the Permittee of the need for further investigative action and/or the

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

need for a Corrective Measures Study to meet the requirements of VIII.H., Appendix C and 40 CFR 264.101 as adopted in 15A NCAC 13A .0109. The Department will notify the Permittee of any "no further action" decision. Any further investigative action required by the Department shall be prepared and submitted in accordance with a schedule specified by the Department and approved in accordance with Condition VIII.F.1.d.

G.   INTERIM MEASURES (IM)

1.   IM Workplan

a.   Upon notification by the Department, the Permittee shall prepare and submit an Interim Measures (IM) Workplan for any SWMU or AOC which the Department determines is necessary. IM are necessary in order to minimize or prevent the further migration of contaminants and limit human and environmental exposure to contaminants while long-term corrective action remedies are evaluated and, if necessary, implemented. The IM Workplan shall be submitted within thirty (30) calendar days of such notification and shall include the elements listed in VIII.G.1.b. Such interim measures may be conducted concurrently with investigations required under the terms of this permit. The Permittee may initiate IM by submitting an IM Workplan for approval and reporting in accordance with the requirements in Condition VIII.G.

b.   The IM Workplan shall ensure that the interim measures are designed to mitigate any current or potential threat(s) to human health or the environment and to be consistent with and integrated into any long-term solution at the facility. The IM Workplan shall include: the interim measures objectives, procedures for implementation (including any designs, plans, or specifications), and schedules for implementation.

c.   The IM Workplan must be approved by the Department, in writing, prior to implementation. The Department shall specify the start date of the IM Workplan schedule in the letter approving the IM Workplan. If the Department disapproves the IM Workplan, the Department shall either (1) notify the Permittee in writing of the IM Workplan's deficiencies and specify a due date for submission of a revised IM Workplan, or (2) revise the IM Workplan and notify the Permittee of the revisions and the start date of the schedule within the approved IM Workplan, or (3) conditionally approve the IM Workplan and notify the Permittee of the conditions.

2.   IM Implementation

a.   The Permittee shall implement the interim measures in accordance with the approved IM Workplan.

b.   The Permittee shall give notice to the Department as soon as possible of any planned changes, reductions, or additions to the IM Workplan.

c.   Final approval of corrective action required under 40 CFR 264.101 as adopted in 15A NCAC 13A .0109 which is achieved through interim measures shall be in accordance with 40 CFR 270.41 as adopted in 15A NCAC 13A .0113 and Condition VIII.I. as a permit modification.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

3. <u>IM Reports</u>

    a. If the time required for completion of interim measures is greater than one (1) year, the Permittee shall provide the Department with progress reports at intervals specified in the approved workplan. The Progress Reports shall contain the following information at a minimum:

        i. A description of the portion of the interim measures completed;

        ii. Summaries of any deviations from the IM Workplan during the reporting period;

        iii. Summaries of any problems or potential problems encountered during the reporting period;

        iv. Projected work for the next reporting period; and

        v. Copies of laboratory/monitoring data.

    b. The Permittee shall prepare and submit to the Department, within ninety (90) calendar days of completion of interim measures conducted under Condition VIII.G., an IM Report. The IM Report shall contain the following information at a minimum:

        i. A description of interim measures implemented:

        ii. Summaries of results;

        iii. Summaries of any problems encountered;

        iv. Summaries of accomplishments and/or effectiveness of interim measures; and

        v. Copies of all relevant laboratory/monitoring data, etc. in accordance with Condition I.D.9.

H. CORRECTIVE MEASURES STUDY

1. <u>Corrective Measures Study (CMS) Workplan</u>

    a. The Permittee shall prepare and submit a CMS Workplan for those units requiring a CMS within ninety (90) calendar days of notification by the Department that a CMS is required. This CMS Workplan shall be developed to meet the requirements of Condition VIII.H.1.b.

    b. The CMS Workplan shall meet the requirements of Appendix C at a minimum. The CMS Workplan shall include schedules of implementation and completion of specific actions necessary to complete a CMS. The Permittee must provide sufficient justification and/or documentation for any unit identified in accordance with Condition VIII.H.1.a. which is deleted from the CMS Workplan. Such deletion of a unit is subject to the approval of the Department. The CMS shall be conducted in accordance with the approved CMS Workplan. The Permittee shall provide sufficient written justification for any omissions or deviations from the minimum requirements of Appendix C. Such omissions or deviations are subject to the approval of the Department. The scope of the

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

CMS Workplan shall include all investigations necessary to ensure compliance with 3005(c)(3), 40 CFR 264.101 and 40 CFR 264.552 as adopted in 15A NCAC 13A .0109, and 270.32(b) as adopted in 15A NCAC 13A .0113. The Permittee shall implement corrective actions beyond the facility boundary, as set forth in Condition VIII.A.5.

c.    The Department shall either approve or disapprove, in writing, the CMS plan. If the Department disapproves the CMS Workplan, the Department shall either (1) notify the Permittee in writing of the CMS Workplan's deficiencies and specify a due date for submittal of a revised CMS Workplan, or (2) revise the CMS Workplan and notify the Permittee of the revisions, or (3) conditionally approve the CMS Work Workplan and notify the Permittee of the conditions. This modified CMS Workplan becomes the approved CMS Workplan.

2.    Corrective Measures Study Implementation

The Permittee shall begin to implement the Corrective Measures Study according to the schedules specified in the CMS Workplan, no later than fifteen (15) calendar days after the Permittee has received written approval from the Department for the CMS Workplan. The CMS shall be conducted in accordance with the approved CMS Workplan approved in accordance with Condition VIII.H.1.c.

3.    CMS Report

a.    The Permittee shall prepare and submit to the Department a draft and final CMS Report for the study conducted pursuant to the approved CMS Workplan. The draft CMS Report shall be submitted to the Department in accordance with the schedule in the approved CMS Workplan. The final CMS Report shall be submitted to the Department within thirty (30) calendar days of receipt of the Department's comments on the draft CMS Report. The CMS Report shall summarize any bench-scale or pilot tests conducted. The CMS Report must include an evaluation of each remedial alternative. If a remedial alternative requires the use of a CAMU, the CMS report shall include all information necessary to establish and implement the CAMU. The CMS Report shall present all information gathered under the approved CMS Workplan. The CMS Final Report must contain adequate information to support the Department's decision on the recommended remedy, described under Condition VIII.I.

b.    If the Department determines that the CMS Final Report does not fully satisfy the information requirements specified under Permit Condition VIII.H.3.a., the Department may disapprove the CMS Final Report. If the Department disapproves the CMS Final Report, the Department shall notify the Permittee in writing of deficiencies in the CMS Final Report and specify a due date for submittal of a revised CMS Final Report. The Department will notify the Permittee of any no further action decision.

c.    As specified under Condition VIII.H.3.a., based on preliminary results and the CMS Final Report, the Department may require the Permittee to evaluate additional remedies or particular elements of one or more proposed remedies.

I.    REMEDY APPROVAL AND PERMIT MODIFICATION

1.    A remedy shall be selected by the Department from the remedial alternatives evaluated in the CMS. The remedy will be based at a

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

minimum on protection of human health and the environment, as per specific site conditions, existing regulations, and guidance.

2. Pursuant to 40 CFR 270.41 as adopted in 15A NCAC 13A .0113, a permit modification will be initiated by the Department upon concurrence of a remedy selected in accordance with Condition VIII.I.1. This modification will serve to incorporate a final remedy, including a CAMU, if necessary, into the permit.

3. Within one hundred and twenty (120) calendar days after this Permit has been modified, the Permittee shall demonstrate financial assurance for completing the approved remedy.

J. MODIFICATION OF THE CORRECTIVE ACTION SCHEDULE OF COMPLIANCE

1. If at any time the Department determines that modification of the Corrective Action Schedule of Compliance is necessary, the Department may initiate a modification to the Schedule of Compliance, Appendix D.

2. Modifications that are initiated and finalized by the Department will be in accordance with the applicable provisions of 40 CFR 270 as adopted in 15A NCAC 13A .0113. The Permittee may also request a permit modification in accordance with 40 CFR 270 as adopted in 15A NCAC 13A .0113.

K. IMMINENT HAZARDS

1. The Permittee shall report to the Department any imminent or existing hazard to public health or the environment from any release of hazardous waste or hazardous constituents. Such information shall be reported orally within 24 hours from such time the Permittee becomes aware of the circumstances. This report shall include the information specified under Condition I.D.14.

2. A written report shall also be provided to the Department within fifteen (15) calendar days of the time the Permittee becomes aware of the circumstances. The written report shall contain the information specified under Condition I.D.14. and; a description of the release and its cause; the period of the release; whether the release has been stopped; and if not, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and prevent recurrence of the release.

L. WORKPLAN AND REPORT REQUIREMENTS

1. All plans and schedules shall be subject to approval by the Department prior to implementation to assure that such workplans and schedules are consistent with the requirements of this permit and with applicable regulations and guidance. The Permittee shall revise all submittals and schedules as specified by the Department. Upon approval the Permittee shall implement all plans and schedules as written.

2. The results of all plans and reports shall be submitted in accordance with the approved schedule. Extensions of the due date for submittals may be granted by the Department based on the Permittee's demonstration that sufficient justification for the extension exists.

3. If the Permittee at any time determines that the SAR information required under Condition VIII.C., or RFI Workplan(s) required under Condition VIII.F., no longer satisfies the requirements of 40 CFR

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

264.101 as adopted in 15A NCAC 13A .0109 or this permit for prior or continuing releases of hazardous waste or hazardous constituents from solid waste management units and/or areas of concern, the Permittee shall submit an amended RFI Workplan(s) to the Department within ninety (90) calendar days of such determination.

4. All reports shall be signed and certified in accordance with 40 CFR 270.11 as adopted in 15A NCAC 13A .0113.

5. Two (2) paper copies and one (1) electronic copy of all reports and plans shall be provided by the Permittee to the Department at the following address:

Ms. Elizabeth W. Cannon, Chief
Hazardous Waste Section
Waste Management Division
1646 Mail Service Center
Raleigh, NC 27699-1646

Electronic reports shall be in MS Word or a common text format. Electronic data shall be in MS Access or a comma delimited format. Data files shall also include a meta data file describing the fields in the data file. Plans shall be electronic to the most reasonable extent possible.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

# PART IX – WASTE MINIMIZATION

A. GENERAL REQUIREMENTS

   Pursuant to 40 CFR 264.73(b)(9) as adopted in 15A NCAC 13A .0109, and Section 3005(h) of RCRA, 42 U.S.C. 6925(h), the Permittee must certify, no less often than annually that:

   1. The Permittee has a program in place to reduce the volume and toxicity of hazardous waste to the degree determined by the Permittee to be economically practicable; and

   2. The proposed method of treatment, storage or disposal is the most practicable method available to the Permittee which minimizes the present and future threat to human health and the environment.

B. WASTE MINIMIZATION RECORD KEEPING

   The Permittee shall maintain copies of the certification in the facility operating record as required by 40 CFR 264.73(b)(9) as adopted in 15A NCAC 13A .0109.

C. WASTE MINIMIZATION PROGRAM OBJECTIVES

   The Waste Minimization Program should include the following elements:

   1. Top Management Support

      a. Dated and signed policy describing management support for waste minimization and for implementation of a waste minimization plan.

      b. Description of employee awareness and training programs designed to involve employees in waste minimization planning and implementation to the maximum extent feasible.

      c. Description of how a waste minimization plan has been incorporated into management practices so as to ensure ongoing efforts with respect to product design, capital planning, production operations, and maintenance.

   2. Characterization of Waste Generation

      Identification of types, amounts, and hazardous constituents of waste streams, with the source and date of generation.

   3. Periodic Waste Minimization Assessments

      a. Identification of all points in a process where materials can be prevented from becoming a waste, or can be recycled.

      b. Identification of potential waste reduction and recycling techniques applicable to each waste, with a cost estimate for capital investment and implementation.

      c. Description of technically and economically practical waste reduction/recycling options to be implemented, and a planned schedule for implementation.

IX-1

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

    d. Specific performance goals, preferably quantitative, for the source reduction of waste by stream. Whenever possible, goals should be stated as weight of waste generated per standard unit of production, as defined by the generator.

4. Cost Allocation System

    a. Identification of waste management costs for each waste, factoring in liability, transportation, record keeping, personnel, pollution control, treatment, disposal, compliance and oversight costs to the extent feasible.

    b. Description of how departments are held accountable for the wastes they generate.

    c. Comparison of waste management costs with costs of potential reduction and recycling techniques applicable to each waste.

5. Technology Transfer

    Description of efforts to seek and exchange technical information on waste minimization from other parts of the company, other firms, trade associations, technical assistance programs, and professional consultants.

6. Program Evaluation

    a. Description of types and amounts of hazardous waste reduced or recycled.

    b. Analysis and quantification of progress made relative to each performance goal established and each reduction technique to be implemented.

    c. Amendments to waste minimization plan and explanation.

    d. Explanation and documentation of reduction efforts completed or in progress before development of the waste minimization plan.

    e. Explanation and documentation regarding impediments to hazardous waste reduction specific to the individual facility.

References:    "Draft Guidance to Hazardous Waste Generators on the Elements of a Waste Minimization Program", 54 FR 25056, June 12, 1989.

                 "Waste Minimization Opportunity Assessment Manual", EPA/625/788/003, July 1988.

# PART X - LAND DISPOSAL RESTRICTIONS

A. <u>GENERAL RESTRICTIONS</u>

1. 40 CFR Part 268 as adopted in 15A NCAC 13A .0112 identifies hazardous wastes that are restricted from land disposal and defines those limited circumstances which an otherwise prohibited waste may continue to be placed on or in a land treatment, storage or disposal unit. The Permittee shall maintain compliance with the requirements of 40 CFR 268 as adopted in 15A NCAC 13A .0112. Where the Permittee has applied for an extension, waiver or variance under 40 CFR 268 as adopted in 15A NCAC 13A .0112 the Permittee shall comply with all restrictions on land disposal under this Part once the effective date for the waste has been reached pending final approval of such application.

B. <u>LAND DISPOSAL PROHIBITIONS AND TREATMENT STANDARDS</u>

1. A restricted waste identified in 40 CFR Part 268 Subpart C as adopted in 15A NCAC 13A .0112 may not be placed in a land disposal unit without further treatment unless the requirements of 40 CFR Part 268 Subparts C and/or D as adopted in 15A NCAC 13A .0112 are met.

2. The storage of hazardous wastes restricted from land disposal under 40 CFR Part 268 as adopted in 15A NCAC 13A .0112 is prohibited unless the requirements of 40 CFR 268 Subpart E as adopted in 15A NCAC 13A .0112 are met.

C. <u>DEFINITIONS</u>

1. For the purposes of 40 CFR Part 268 as adopted in 15A NCAC 13A .0112, "Land Disposal" means placement in or on the land and includes, but is not limited to, placement in a landfill, surface impoundment, waste pile, injection well, land treatment facility, salt dome formation, underground mine or cave, or concrete vault or bunker intended for disposal purposes.

# PART XI – ORGANIC AIR EMISSIONS REQUIREMENTS FOR PROCESS VENTS AND EQUIPMENT LEAKS

A. GENERAL INTRODUCTION

In the June 21, 1990, Federal Register, EPA published the final rule for Phase I Organic Air Emission Standards (40 CFR Parts 264 and 265, Subparts AA and BB) for hazardous waste treatment, storage, and disposal facilities. Subpart AA contains emission standards for process vents associated with distillation fractionation, thin-film evaporation, solvent extraction, and air or steam stripping operations that process hazardous waste with an annual average total organic concentration of at least ten (10) parts per million (ppm) by weight. SUBPART AA DOES NOT APPLY TO AIR STRIPPING OPERATIONS USED FOR CORRECTIVE ACTION PURPOSES. Subpart BB contains emission standards that address leaks from specific equipment (i.e. pumps, valves, compressors, etc.) that contains or contacts hazardous waste that has an organic concentration of at least ten (10) percent by weight.

B. ORGANIC AIR EMISSION STANDARDS

The Permittee shall comply with the Organic Air Emissions Requirements of 40 CFR 264, Subpart AA (for process vents), and Subpart BB (for equipment leaks) as adopted in 15A NCAC 13A .0109 and 40 CFR 270.24 and 270.25 as adopted in 15A NCAC 13A .0113 as applicable.

Received for Filing Oakland County Clerk  6/7/2017 2:42 PM

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

## PART XII - RCRA ORGANIC AIR EMISSION REQUIREMENTS

A.   APPLICABILITY

1.   Subpart CC applies to all tanks, containers, surface impoundments and/or miscellaneous units, identified in Condition XII.A., except as provided for in 40 CFR 264.1 and 264.1080(b) as adopted in 15A NCAC 13A .0109.

The Conditions of this Part apply to:

2.   Hazardous waste management units identified below, for which required control equipment has been installed and is operational or are exempt from Subpart CC standards under 40 CFR 264.1082(c) as adopted in 15A NCAC 13A .0109.

| Table XII.A.2. Hazardous Waste Management Units for Which Subpart CC Emissions Controls are Installed | | |
|---|---|---|
| HWMU Designation/ Identification Number | HWMU Type | Description of Air Emission Control System |
| Storage Area #1 | Level 1 and Level 2 Containers | Containers meet applicable US D.O.T. standards |
| Storage Area #2 | Level 1 and Level 2 Containers | Containers meet applicable US D.O.T. standards |
| Storage Area #3 | Level 1 and Level 2 Containers | Containers meet applicable US D.O.T. standards |
| Storage Area #6 | Level 1 and Level 2 Containers | Containers meet applicable US D.O.T. standards |
| 1,000-gallon Waste Feed Tank | Level 1 | Fixed roof with conservation vent |

Case 3:21-cv-00458-KDB-DSC   Document 1378-18   Filed 03/21/22   Page 46 of 48

B. EMISSION CONTROL TECHNOLOGY

   The Permittee shall install and maintain all regulated units and associated emission control technology in accordance with the detailed plans, schedules, information and reports as contained Section L.

C. GENERAL STANDARDS

   The Permittee shall comply with the applicable requirements of 40 CFR Part 264, Subpart CC as adopted in 15A NCAC 13A .0109.

D. REPORTING REQUIREMENTS

   1. For each tank, surface impoundment, or container which manages hazardous waste that is exempted from using air emission controls, a written report shall be submitted to the Department within fifteen (15) days of each occurrence when hazardous waste is placed in the waste management unit in noncompliance with 40 CFR 264.1082(c)(1) or (c)(2) as adopted in 15A NCAC 13A .0109, as applicable. The written report shall contain the EPA identification number, facility name and address, a description of the noncompliance event and the cause, the dates of the noncompliance, and the actions taken to correct the noncompliance and prevent reoccurrence of the noncompliance.

   2. For tanks listed in Conditions XII.A.2. or XII.A.3., which use air emission controls in accordance with the requirements 40 CFR 264.1084(c) as adopted in 15A NCAC 13A .0109, a written report shall be submitted to the Department within fifteen (15) days of each occurrence when hazardous waste is managed in the tank in noncompliance with the Conditions specified in 40 CFR 264.1084(c)(1) through (c)(4) as adopted in 15A NCAC 13A .0109. The written report shall contain the EPA identification number, facility name and address, a description of the noncompliance event and the cause, the dates of the noncompliance, and the actions taken to correct the noncompliance and prevent reoccurrence of the noncompliance.

   3. For control devices used in accordance with the requirements of 40 CFR 264.1087 as adopted in 15A NCAC 13A .0109, a semiannual written report shall be submitted to the Department except as provided for in Condition XII.D.4. of this Part. The report shall describe each occurrence during the previous 6-month period when a control device is operated continuously for 24 hours or longer in noncompliance with the applicable operating values defined in 40 CFR 264.1035(c)(4) as adopted in 15A NCAC 13A .0109 or when a flare is operated with visible emissions as defined in 40 CFR 264.1033(d) as adopted in 15A NCAC 13A .0109. The written report shall include the EPA identification number, facility name and address, and an explanation why the control device could not be returned to compliance within 24 hours, and actions taken to correct the noncompliance.

   4. A report to the Department in accordance with the requirements of Condition XII.D.3. of this Part is not required for a 6-month period during which all control devices subject to 40 CFR Part 264, Subpart CC, as adopted in 15A NCAC 13A .0109 are operated by the owner or operator such that during no period of 24 hours or longer did a control device operate continuously in noncompliance with the applicable operating values defined in 40 CFR 264.1035(c)(4) as adopted in 15A NCAC 13A .0109 of this part or a flare operate with visible emissions as defined in 40 CFR 264.1033(d) as adopted in 15A NCAC 13A .0109.

Received for Filing Oakland County Clerk 6/7/2017 2:42 PM

5.   All reports shall be signed and dated by an authorized representative of the Permittee as per 40 CFR 270.11(b) as adopted in 15A NCAC 13A .0113.

E.   NOTIFICATION OF NEW UNITS

Prior to installing any tank, container, surface impoundment or miscellaneous unit subject to 40 CFR Part 264, Subpart CC, the Permittee shall apply for a permit modification under 40 CFR 270.42 as adopted in 15A NCAC 13A .0113, and provide specific Part B application information required under 40 CFR 270.14-17 and 270.27 as adopted in 15A NCAC 13A .0113, as applicable, with the modification request.

Received for Filing Oakland County Clerk   6/7/2017 2:42 PM