## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:21-CV-00458-KDB-DSC

| | |
|---|---|
| **TREX PROPERTIES LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **25TH STREET HOLDING COMPANY** | ) |
| **INC. et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Third-Party Defendant Environmental Liability Transfer Inc.'s "Motion to Dismiss Powder Coating Services Inc.'s Amended Third-Party Complaint" (document #1675) and the parties' briefs and exhibits.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Third-Party Defendant Environmental Liability Transfer Inc.'s "Motion to Dismiss Powder Coating Services Inc.'s Amended Third-Party Complaint" (document #1675) be <u>denied</u> as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action for contribution under 42 U.S.C. § 9613 of the Comprehensive Environmental Response, Cost Recovery and Liability Act ("CERCLA"). Plaintiff seeks

contribution and cost recovery as well as a declaratory judgment for response costs incurred and to be incurred following the release or threatened release of hazardous substances at the Trex North Carolina Facility ("Facility"). Plaintiff filed its Complaint against more than 919 Defendants, including Defendant/Third-Party Plaintiff Powder Coating Services, Inc. ("PCS").

It is undisputed that from 2002 through June 18, 2013, Third-Party Defendant Detrex owned the Facility. Accepting the factual allegation of PCS' Amended Third-Party Complaint as true, Parts Cleaning Technologies of North Carolina Inc. ("PCT NC") and Solvent Distributors of North Carolina Inc. ("Solvent Distributors") operated the Facility pursuant to a lease between PCT NC and Detrex.

On June 18, 2013, Detrex sold the Facility. Detrex transferred its ownership interest to Third-Party Defendant Environmental Liability Transfer Inc. ("ELT"). Detrex entered into an Environmental Liabilities Transfer Agreement with ELT. Under the Transfer Agreement, ELT assumed Detrex's liabilities related to environmental conditions at the Facility. ELT also accepted assignment of the Lease and Service Agreement with PCT NC and Solvent Distributors. That same day, ELT transferred all of its ownership to Trex. ELT also transferred and Trex assumed the liabilities related to environmental conditions at the Facility.

On March 31, 2014, the North Carolina Department of Environment and Natural Resources issued a Notice of Violation for the Trex Facility alleging multiple violations of the Resource Conservation and Recovery Act ("RCRA") permit and regulations concerning hazardous waste.

On March 21, 2022, PCS filed a Third-Party Complaint against Detrex and others. On April 6, 2022, PCS filed its Amended Third-Party Complaint. Dkt. 1457. PCS asserts claims for fraud and contribution under CERCLA.

On August 1, 2022, ELT filed its Motion to Dismiss arguing that there is no basis for personal jurisdiction and that PCS has failed to state a claim upon which relief can be granted.

## II. DISCUSSION

### A. Personal Jurisdiction

In evaluating a motion to dismiss for lack of personal jurisdiction, all factual disputes must be resolved in favor of the non-moving party. The non-moving party must make a prima facie showing that the exercise of personal jurisdiction is proper. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1064 (4th Cir. 1982); General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc., 765 F. Supp. 1246, 1248 (W.D.N.C. 1991). A plaintiff must prove facts sufficient for the court to find that it has personal jurisdiction. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). See also Renfinity, Inc. v. Jones, 2022 WL 332782 at *1 (W.D.N.C. Feb 3, 2022); White by and through White v. Aetna Life Ins. Co., 519 F.Supp.3d 253, 257-58 (W.D.N.C. 2021) (citations omitted).

PCS must show that the exercise of personal jurisdiction over ELT complies with the forum state's long-arm statute and the constitutional requirements of due process. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Since "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." Id., citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). See also Thomas Centennial Communications Corp., No. 3:05CV495, 2006 WL 6151153, at *2 (W.D.N.C. December 20, 2006).

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

A court may exercise general jurisdiction over a non-resident defendant if that defendant has contacts with the State that are so "continuous and systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). There is no allegation that Parts had such continuous and systematic contacts with North Carolina.

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant in a cause of action arising from that defendant's activities in the forum state. The Fourth Circuit has "synthesized the due process requirement for asserting specific personal jurisdiction in a three-part test . . . (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

As the Fourth Circuit has explained, "our reasonableness analysis is designed to ensure that jurisdictional rules are not exploited 'in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.'" Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 217 (4th Cir. 2001) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). As the Fourth

Circuit stated in the final analysis, "[f]airness is the touchstone of the jurisdictional inquiry." Tire Eng'g. & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012), cert. denied, 133 S. Ct. 846 (2013).

The Fourth Circuit has made clear that a single contract executed or performed in North Carolina can satisfy the minimum contacts requirement. See, e.g., Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003); Capstar Corp. v. Pristine Industries, Inc., 768 F. Supp. 518, 524 (W.D.N.C. 1991).

CERCLA allows "private parties to recover the costs of cleaning up hazardous wastes from certain defined types of persons." PCS Nitrogen Inc. v. Ashley II of Charleston LLC, 714 F.3d 161, 167 (4th Cir. 2013) (quoting Axel Johnson, Inc. v. Carroll Carolina Oil Co., 191 F.3d 409, 413 (4th Cir. 1999)). To establish a prima facie case for cost recovery, plaintiff must plead that (1) the defendant is a potentially responsible person ("PRP"); (2) the site constitutes a "facility"; (3) a "release" or a threatened release of hazardous substances exists; (4) the plaintiff has incurred costs responding to the release or threatened release of hazardous substances; and (5) the response costs conform to the National Contingency Plan. Id. at 167-68 (citing 42 U.S.C. §§ 9601(9), (22), 9607(a) and ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 356 (2d Cir.1997)).

There are four non-mutually exclusive classes of PRPs. Id. at 172 (citing 42 U.S.C. § 9607(a) and Nurad, Inc. v. William E. Hooper & Sons Co., 966 F.2d 837, 841 (4th Cir. 1992)). They include (1) the current "owner" or "operator" of a "facility"; (2) any "person" who "owned" or "operated" the "facility" at the time of disposal of a hazardous substance; (3) any "person" who "arranged for disposal or treatment" of hazardous substances at the "facility"; and (4) any "person" who accepts hazardous substances "for transport to disposal or treatment facilities, incineration vessels or sites." Id.

"The classes of PRPs have an undeniably broad reach." Id. (citing United States v. Atl. Research Corp., 551 U.S. 128, 136 (2007)). But the limitations of derivative liability inherent in corporate law still apply. Id. (citing United States v. Bestfoods, 524 U.S. 51, 62–64 (1998)). There is no dispute that Detrex, PCS, PCT NC, and Solvent Distributors are PRPs. At this stage in the proceedings, the Court concludes that ELT is a PRP. Albeit only for a day, ELT was an owner of the Facility which is the subject of this CERCLA action.

Applying those principles to the jurisdictional facts here, PCS has made a prima facie showing that the exercise of specific personal jurisdiction over ELT is proper. ELT's potential liability as a PRP arises directly from its purposeful activity with the Facility. The exercise of personal jurisdiction is constitutionally reasonable here. Accordingly, the undersigned respectfully recommends that Third-Party Defendant's Motion to Dismiss for Lack of Personal Jurisdiction be denied.

## B. Failure to State a Claim

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327

(1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

ELT contends that Trex assumed all liabilities it acquired from Detrex.   CERCLA § 107(e)(1) allows agreements between private parties "to insure, hold harmless, or indemnify a party to such agreement." 42 U.S.C. § 9607(e)(1).   But every Circuit that has addressed the issue has concluded that § 107(e)(1) allows private parties to allocate CERCLA liability between each other, but "precludes efforts to divest a responsible party of [its] liability." Harley-Davidson, Inc. v. Minstar, Inc., 41 F.3d 341, 342-43 (7th Cir. 1994) ("we agree with every other appellate court that has been called on to interpret [§ 107(e)(1)] that it does not outlaw indemnification agreements, but merely precludes efforts to divest a responsible party of [its] liability.") Both the Fourth Circuit and this Court are in accord. C.P. Chemicals, Inc. v. Exide Corp., Inc., 14 F.3d 594 (table/unpublished), No. 93-1426, 1993 WL 535277 at *1 (4th Cir. Dec. 28, 1993) (§ 107(e)(1) allows private parties to allocate CERCLA liability); United States v. Godley, __ F.Supp.3d __, 2021 WL 5242855 at *13 (W.D.N.C. Nov. 10, 2021) (although private parties may contractually allocate CERCLA liability "amongst themselves, they cannot absolve themselves of liability to the EPA through such a contract"). Accord John S. Boyd Co. v. Boston Gas Co., 992 F.2d 401, 405 (1st Cir. 1993) (parties may contractually allocate liability under § 107(e)(1) among themselves, but party "cannot escape liability by means of a contract with another party."); United States v. Hardage, 985 F.2d 1427, 1433 (10th Cir. 1993) (a private party may allocate CERCLA liability to another private party via an indemnity, but cannot "transfer" its liability); Fisher Dev. Co. v. Boise

<u>Cascade Corp.</u>, 37 F.3d 104, 107 (3rd Cir. 1994) ("responsible parties cannot contract away their liability under CERCLA for cleaning up a release, but they may allocate the ultimate financial burden of that clean-up by agreements among themselves."); <u>AM Int'l., Inc. v. Int'lForging Equip. Corp.</u>, 982 F.2d 989, 994 (6th Cir. 1993) (same); <u>Mardan Corp. v. C.G.C. Music</u>, Ltd., 804 F.2d 1454, 1458-60 (9th Cir. 1986) (same); <u>Olin Corp. v. Consol. Aluminum Corp.</u>, 5 F.3d 10, 14 (2d Cir. 1993) (same<u>); PMC, Inc. v. Sherwin-Williams Co.</u>, 151 F.3d 610, 613 (7th Cir. 1998) (same).

Put differently, while private parties may contract to allocate their CERCLA liability among themselves, they remain subject to third-party claims. <u>E.g.</u>, <u>Truck Components Inc. v. Beatrice Co.</u>, 143 F.3d 1057, 1059 (7th Cir. 1998) (seller that received contractual release and indemnity from buyer still subject to CERCLA claims by "third parties" or "strangers" to the contract.) Pursuant to § 107(e)(1), "a private party can pursue any responsible party it desires," even a party that received a release or indemnity from another party. <u>John S. Boyd</u>, 992 F.2d at 405. <u>See also</u> <u>Hobart Corp. v. Dayton Power & Light Co.</u>, 407 F.Supp.3d 732, 739, 741-43 (S.D. Ohio 2019) (party that received contractual release and indemnity remained liable to third parties); <u>Cyprus Amax Minerals Co. v. CBS Operations, Inc.</u>, 2012 WL 4857924 at *3 (N.D. Ok. Oct. 12, 2012) ("liable parties can contractually shift responsibility for their response costs among each other … but they may not thereby escape their underlying liability to the Government or another third party.") (emphasis in original), quoting <u>Purolator Products Corp. v. Allied-Signal, Inc.</u>, 772 F.Supp. 124, 129 (W.D.N.Y. 1991); <u>Scarlett & Assoc., Inc. v. Briarcliff Ctr. Partners, LLC</u>, 2009 WL 3151089 at *18 (N.D. Ga. Sep. 30, 2009) ("although CERCLA permits private parties to contractually allocate their liability to each other, [§ 107(e)(1)] provides that a contractual indemnity shall not relieve an owner of contaminated property of its CERCLA liability to third parties."); <u>Canadyne-Georgia Corp. v. Cleveland</u>, 72 F.Supp.2d 1373, 1377 (M.D. Ga. 1999) ("if

a buyer of real property assumes all CERCLA liability in a contract with the seller, that promise will not prevent an innocent third party, such as a government agency, from holding the seller liable in [a] cost recovery action brought under CERCLA.")

As stated above, ELT has potential liability as a PRP due to its fleeting ownership of the Facility. Therefore, the undersigned respectfully recommends that ELT's Motion to Dismiss be <u>denied</u>.

## III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Third-Party Defendant Environmental Liability Transfer Inc.'s "Motion to Dismiss Powder Coating Services Inc.'s Amended Third-Party Complaint" (document #1675) be **DENIED**.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel <u>and to the Honorable Kenneth D. Bell.</u>

**SO ORDERED AND RECOMMENDED.**

Signed: August 23, 2022

David S. Cayer
United States Magistrate Judge