IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-00458-KDB-DSC

| | |
|---|---|
| TREX PROPERTIES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> 25TH STREET HOLDING COMPANY, INC. ET AL., <br><br> Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Trex Properties LLC's ("Trex") motion to dismiss Defendant Powder Coating Services, Inc.'s ("Powder") counterclaim for constructive fraud (Doc. No. 1677); the memorandum and recommendation of Magistrate Judge David Cayer on August 23, 2022, recommending the motion be denied (Doc. No. 1704); Trex's objection to that M&R (Doc. No. 1711); and Trex's Motion to Dismiss Its Underlying Claims Against Powder Coating Services, Inc. Without Prejudice pursuant to Fed. R. Civ. Proc. 41(a)(2) (Doc. No. 1725). The Court has carefully considered these motions, the parties' briefs and exhibits, and oral argument on the motions from the parties' counsel on October 13, 2022. For the reasons discussed below, the Court will deny both motions.

In summary, as to Trex's motion to dismiss Powder's constructive fraud counterclaim under Rule 12(b)(6), the claim is not untimely under the ten year statute of limitations that Trex now concedes is applicable under North Carolina law, and Powder has plausibly alleged a sufficient relationship of trust and confidence between Powder and the operator of the waste disposal facility to support its counterclaim. With respect to Trex's second motion to dismiss its

1

own claims, Federal Rule of Civil Procedure 41(a)(2) clearly states that this Court may not dismiss an action over a defendant's objection if the defendant's counterclaims cannot independently remain pending. Here, Trex argues that Powder's federal statutory counterclaims for contribution and a declaratory judgment under CERCLA cannot proceed if Trex's CERCLA claims are dismissed, and Powder objects to the dismissal of Trex's claims. Therefore, Rule 41(a)(2) requires the denial of Trex's motion to dismiss its underlying claims.

## I. LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). A complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Further, a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail") (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462,

1465 (4th Cir. 1991)); *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

> Federal Rule of Civil Procedure 41(a)(2) provides:
>
> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed. R. Civ. Proc. 41(a)(2). The purpose of Rule 41(a)(2) is to freely allow voluntary dismissals unless the parties will be unfairly prejudiced. To fulfill this purpose, Rule 41(a)(2) requires a court order as a prerequisite to dismissal and permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice. In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant. *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). The decision to grant a voluntary dismissal under Rule 41(a)(2) is committed to the discretion of this Court. *Id*.

## II. FACTS AND PROCEDURAL HISTORY

Trex filed this action claiming that it is entitled to contribution and cost recovery under 42 U.S.C. § 9613 of the Comprehensive Environmental Response, Cost Recovery and Liability Act ("CERCLA") against more than 900 companies who are alleged to be "potentially responsible parties" for the release of hazardous substances at a Charlotte, North Carolina waste disposal facility (the "Trex Facility"). Trex obtained the property in June 2013 in a series of transactions in which its parent company (Environmental Liability Transfer, Inc. ("ELT")) was paid more than

3

Case 3:21-cv-00458-KDB-DSC   Document 1754   Filed 10/17/22   Page 3 of 10

$12 million by Detrex, the former property owners, to assume the environmental liabilities at 20 different properties. Nearly all of the numerous defendants (who are auto body shops and other small businesses that generate used oil and other disposable wastes) have either settled by paying a modest settlement fee of several thousand dollars or defaulted. However, the relatively small settlements have added up to a sizeable recovery. Trex has already received more than $8 million in settlement payments, which may well substantially (and improperly) exceed its past and future costs to clean up the Trex Facility.[1,2]

Unlike other defendants, Powder has refused to settle and filed Counterclaims and Third Party Claims (against Detrex, ELT and Parts Cleaning Technologies, Inc. ("PCT") (the facility operator and/or parent of the operator who allegedly committed the environmental violations). (Doc. Nos. 1378, 1457). On August 1, 2022, Trex moved to dismiss Powder's counterclaim for constructive fraud (Doc. No. 1677) and Judge Cayer issued a M&R on August 23, 2022, recommending the motion be denied (relying on another recent M&R recommending denial of Detrex's motion to dismiss (Doc. No. 1669)). (Doc. No. 1704). Trex objected to this M&R on September 6, 2022 (Doc. No. 1711).

---

[1] There appears to be a significant question as to the cost to clean up the site, with Trex claiming that it has spent $2.9 million, with a total estimated cost (including all potential contingent costs, however unlikely) exceeding $8 million. However, Trex has represented to North Carolina environmental officials, as recently as April 2022, that the total past and future response costs will be approximately $1.5 million. Trex was unable to explain this significant discrepancy at oral argument, other than to make the puzzling argument that the North Carolina amount was "conservative," which the Court expects would result in the state amount being higher rather than lower. Moreover, no effort was made to explain how the amount represented to the state could in any event be approximately half of the amount that Trex has represented to this Court has already been spent in cleaning up the properties.

[2] It is well established that a property's owner cannot use CERCLA to reap a profit or windfall. *See In re Kaiser Gypsum Co., Inc.*, 2020 WL 6737641 at *19 (W.D.N.C. Bnkr. Nov. 13, 2020); *see also Freidland v. TIC-The Industrial Co.*, 566 F.3d 1203, 1207 (10th Cir. 2009).

Then, a week later on September 14, 2022, Trex moved to dismiss all its "underlying claims against … Powder… without prejudice" pursuant to Fed. R. Civ. Proc. 41(a)(2). (Doc. No. 1725). Powder opposes the motion to the extent it would affect any of its counterclaims. In reply, Trex argues that the dismissal of its CERCLA claims would eliminate all of Powder's CERCLA related counterclaims and third party claims and asks the Court to not retain supplemental jurisdiction over Powder's state law claims for constructive fraud.

## III.   DISCUSSION

### Motion to Dismiss Powder's Constructive Fraud Counterclaim

Trex seeks to dismiss Powder's constructive fraud counterclaim on two grounds. First, it argues that the counterclaim should be dismissed as outside the three year statute of limitations for fraud. However, the statute of limitations for constructive fraud is 10 years. *Chisum v. Campagna*, 376 N.C. 680, 707, 855 S.E.2d 173, 192, reh'g denied, 377 N.C. 217, 855 S.E.2d 799 (2021). Also, Powder alleges that it reasonably did not discover the alleged fraud until less than three years before it filed its counterclaims. (*See* Doc. No. 1742 at f.n. 8). Accordingly, Powder's counterclaim may not be dismissed on the basis of the statute of limitations (particularly under Rule 12(b)(6), which requires that a Plaintiff's allegations be taken as true).

Trex's second argument against the constructive fraud counterclaim is more substantial. The counterclaim is based on Trex's assumption of the liabilities of PCT / Detrex, the parties that allegedly fraudulently induced Powder to pay them to handle Powder's wastes, as well as Trex's own unlawful handling of wastes at the Trex Facility. Trex argues that Powder cannot establish the "special or fiduciary relationship" between Powder and Detrex / PCT or between Powder and Trex necessary to establish constructive fraud because Powder "was a sophisticated entity operating at arms-length." (Doc. 1711 at 6).

5

In response, Powder argues that it has sufficiently alleged that the detailed circumstances surrounding its relationship with Detrex and PCT, and their agents, "created a relationship of trust and confidence" pursuant to which they had "a fiduciary duty to be truthful with [Powder] regarding the handling of [Powder's Wastes]." *See* Doc. No. 1378 at p. 21, ¶ 46.) More specifically, Powder argues that Detrex and PCT knew they were in a position of superiority to manage Powder's wastes, and "PCSI had no way of knowing" whether Powder's wastes were handled properly or that the Facility was "actually operated . . . in compliance with applicable laws as their agents represented to PCSI." Thus, Powder contends that it reposed confidence in the permitted and licensed businesses that handled its wastes. *See* Doc. No. 1378 at p. 20, ¶¶ 42-45.

Under North Carolina law, "the existence of a fiduciary relationship is not contingent upon a technical or legal relationship." *HAJMM Co. v. House of Raeford Farms, Inc.,* 94 N.C.App. 1, 11, 379 S.E.2d 868, 874 (1989); *Dixon v. Gist*, 219 N.C. App. 630, 635 (2012). Rather, "a fiduciary relationship can be found to exist 'anytime one person reposes a special confidence in another, in which event the one trusted is bound to act in good faith and with due regard to the interests of the other,' and a claim for constructive fraud based upon a breach of such a relationship is sufficiently pled 'by alleging facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Dixon*, 219 N.C. App. at 633-34; *see South Atlantic Ltd. Partnership of Tennessee, LP v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002), *citing Abbitt v. Gregory*, 210 N.C. 577, 160 S.E. 896, 906 (1931) (fiduciary relationship can arise in "any possible case" and "within any relationship" where "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."); *see also Troche v.*

6

*Bimbo Foods Bakeries Distribution, Inc.*, 2014 WL 1669112 at *3-5 (W.D.N.C. April 28, 2014) (fiduciary relationship exists where "confidence reposed on one side, and the resulting superiority and influence on the other.") (citation omitted).

However, there is a significant tension between these principles and the similarly well-established reluctance under North Carolina law to transform commercial relationships into fiduciary relationships subject to potential tort or unfair trade practices claims. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) ("parties to a contract do not thereby become each other's fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the [Uniform Commercial Code]"); *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 665-66, 391 S.E.2d 831, 832-33 (1990) (affirming directed verdict on breach of fiduciary duty claim); *Indus. Timber, LLC v. Jackson Furniture Indus., Inc.*, No. 322CV00229KDBDCK, 2022 WL 5265156, at *3 (W.D.N.C. Oct. 6, 2022). If simply asking a vendor of a service whether or not they can lawfully and properly do the work being requested can be the basis of a fiduciary relationship (as Trex portrays the facts), that might create a significant loophole in the general rule that potential contractual claims should not be turned into tortious conduct. On the other hand, the fact that Powder faced a legal duty to properly dispose of its hazardous waste and the Trex Facility represented that it would perform that duty may create a special or fiduciary relationship beyond the parties' commercial transaction.

Plainly, the Court cannot properly resolve this important question at this stage of the litigation. Powder's alleged "sophistication" and the nature of its relationships with PCT, Detrex and Trex are fact issues that cannot be resolved under Rule 12(b)(6). *E.g., Durham v. City of Charlotte,* 2022 WL 3337734 at *3 (W.D.N.C. June 15, 2022) (Rule 12(b)(6) addresses dispositive

issues of law, not questions of fact.). For present purposes, Powder has sufficiently alleged the existence of a fiduciary relationship based on the particular circumstances of its dealings with those responsible for the Trex Facility and a final ruling on the merits of its constructive fraud claim must wait at least until the full development of the factual record. Therefore, Trex's motion to dismiss Powder's constructive fraud counterclaim will be denied.

### **Plaintiff's Motion to Dismiss its Underlying Claims**

Trex seeks to dismiss its "underlying" (i.e. all of its) claims against Powder "without prejudice" pursuant to Fed. Rule Civ. Proc. 41(a)(2), which allows a plaintiff, with the approval of the court, to - under the circumstances permitted by the rule - dismiss voluntarily an action without prejudice at any time. As noted above, Rule 41(a)(2) provides, in part:

> If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.

Fed. R. Civ. Proc. 41(a)(2). Powder has filed federal statutory counterclaims (under CERCLA and 28 U.S.C. §2201) and a state law counterclaim (constructive fraud) against Trex. Powder objects to Trex's dismissal of its claims if Powder's counterclaims cannot remain pending. In response, Trex asserts that while Powder's federal statutory counterclaims cannot remain if Trex's claims are dismissed, Powder's state law counterclaim can remain pending (although Trex urges the Court not to retain it under the Court's supplemental jurisdiction).

While Trex has argued in support of this motion that Powder's federal counterclaims lack merit, Trex specifically did not move to dismiss either of Powder's federal counterclaims when it moved to dismiss Powder's constructive fraud claim. *See* Doc. No. 1677-1 ("Plaintiff does not move to dismiss and files contemporaneously herewith its Answer to the First Claim for Relief for CERCLA Contribution and Third Claim for Relief for Declaratory Judgment to the extent it relates

to the First Claim for Relief."). Also, for the reasons discussed above, the Court will deny Trex's motion on the state law counterclaim. Thus, under the plain language of Rule 41(a)(2), the success of Plaintiffs' motion depends on whether Defendants' counterclaims "can remain pending for independent adjudication" if the Court grants the requested dismissal. This question, in turn, requires a determination regarding whether Defendants' counterclaims have an independent jurisdictional basis.

Although Trex surely did not intend to do so, its determined argument that Powder's federal counterclaims lack independent jurisdictional grounds to proceed in the absence of Trex's CERCLA claims against Powder,[3] dooms Trex's motion. Applying, as the Court must, the clear language of the rule, if Powder objects to the dismissal, which it does if all its counterclaims cannot remain pending, then the Court cannot dismiss the action. *See Slate v. Byrd*, No. 1:09CV852, 2011 WL 5419677, at *2–4 (M.D.N.C. Nov. 9, 2011); *Wyandotte Nation v. City of Kansas City, Kansas*, 200 F. Supp. 2d 1279 (D. Kan. 2002); 9 Fed. Prac. & Proc. Civ. § 2365 (4th ed.).

Accordingly, because Trex asserts that no independent jurisdictional basis exists to allow the Court to adjudicate Powder's federal counterclaims separately from Trex's claims and Powder has objected to Trex's dismissal request, the Court will deny Trex's motion to dismiss its underlying claims pursuant to Fed.R.Civ.P. 41(a)(2).

---

[3] Because Rule 41(a)(2) requires that Trex's motion be denied if Powder's counterclaims cannot remain pending and the same practical effect would result if there was an independent jurisdictional basis for the counterclaims, the Court need not resolve the merits of Trex's arguments that Powder's counterclaims lack an independent ground for federal jurisdiction. Further, the Court notes that if Powder's federal counterclaims were compulsory (i.e. arising out of the same transaction or occurrence), the district court has supplemental jurisdiction under Section 1367 of Title 28 of the United States Code to decide them even though Trex's claims are dismissed. *See* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2365 (4th ed.)

9

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motions to Dismiss (Doc. Nos. 1677 and 1725) are **DENIED**; and

2. The Court will enter an order setting a schedule for the next proceeding in this matter – specifically a bench trial on the allocation of responsibility for the costs to clean up the waste at the Trex Facility – promptly following the parties providing to the Court their estimate of how quickly they can be prepared. **The parties are directed to provide that estimate to the Court on or before October 26, 2022.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 17, 2022

Kenneth D. Bell
United States District Judge