# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:21-CV-00458-KDB-DSC

| | |
|---|---|
| TREX PROPERTIES LLC, | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| 25TH STREET HOLDING COMPANY, INC. ET AL., | |
| **Defendants.** | |

**THIS MATTER** is before the Court on Plaintiff's Motion to Dismiss the Defaulting Defendants and Certain Non-Defaulting Defendants without Prejudice (Doc. No. 1769). The Court has carefully considered this motion and the full record in this action. For the reasons discussed below, the Court will deny the motion with leave to refile upon either an evidentiary showing that Plaintiff has not already recovered more in settlements and other payments than it is likely to cost to remedy the environmental damage on the property that is the subject of this CERCLA action or a stipulation that the requested dismissals be with prejudice.

## I.     LEGAL STANDARD

Plaintiff files its motion seeking an order of dismissal for the 288 defendants previously defaulted in this action purportedly pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). That rule allows a party to dismiss an action "*Without a Court Order*" by filing a "notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. Proc. 41(a)(1)(A)(i). However, no doubt recognizing (accurately) that seeking the dismissal of parties already defaulted by court order is, at best, an ill fit for a Rule 41(a)(1)

1

dismissal, Plaintiff seeks by its motion "an appropriate Order" dismissing the defaulted defendants. *See* Doc. No. 1769. In practical effect, Plaintiff seeks to "set aside" the defaults and then voluntarily dismiss the defendants. Setting aside a court ordered default is, as Plaintiff suggests by the terms of its motion, properly accomplished by court order.

The applicable rule of civil procedure for dismissal "*By Court Order*" is Rule 41 (a)(2), which allows a party to dismiss an action "at the plaintiff's request … on terms that the court considers proper." Fed. R. Civ. Proc. 41(a)(2). Thus, Rule 41(a)(2) authorizes, but does not require, a district court to impose conditions on a request for dismissal. *Stretchline Intell. Properties Ltd. v. H&M Hennes & Mauritz LP*, No. 2:10-CV-371, 2015 WL 789185, at \*3 (E.D. Va. Feb. 24, 2015).

Rule 41(a)(2) dismissals are without prejudice "[u]nless otherwise specified in the [district court's] order." Fed.R.Civ.P. 41(a)(2). Accordingly, the court is not bound to grant a plaintiff's request for dismissal without prejudice and the court's authority to dismiss *with* prejudice is implied in the language of the rule. *Choice Hotels Int'l, Inc. v. Goodwin & Boone,* 11 F.3d 469, 471 (4th Cir.1993). Notwithstanding its authority, when a plaintiff files a Rule 41(a)(2) motion for voluntary dismissal without prejudice and the court intends to dismiss with prejudice, the court may not do so unless it first provides the plaintiff with the minimum requirements of fundamental fairness, including: (1) advance notice of its inclination toward such dismissal, (2) the opportunity to respond to defense counsel's request for that result; and (3) the option of allowing its case to proceed to judgment on the merits. *Grades v. Gregory,* 37 F.3d 1493, 1493 (4th Cir.1994) (unpublished) (*per curiam*). *See also Andes v. Versant Corp., 788 F.2d 1033, 1037 (4th Cir. 1986)*("It upsets notions of fundamental fairness for a court, in response to a party's request for dismissal without prejudice, to grant the request by dismissing *with* prejudice, while

2

failing to give the moving party notice of its inclination to impose this extreme remedy. A plaintiff deserve[s] such notice and an opportunity to proceed with the litigation of this case."); *United States v. One Tract of Real Prop.,* 95 F.3d 422, 425–26 (6th Cir.1996) (adopting the approach of its sister circuits, including the Fourth Circuit's decision in *Andes*).

Beyond the applicable rules of civil procedure, the Court has the inherent power to sanction the prosecution of bad faith litigation and litigation misconduct. "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1474 (D.C.Cir.1995). The Court also has the inherent power to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. *Id.*, citing *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580 (1946).

Because of its very potency, inherent power must be exercised with restraint and discretion, *Chambers,* at 44, and its use must be a reasonable response to the problems and needs that provoke it. *Thomas v. Arn,* 474 U.S. 140, 146–148 (1985); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980). With respect to when it is appropriate to invoke a court's inherent power, the Supreme Court has advised that the limits found in various statutes and rules do not displace that power. *See Chambers* at 46. Still, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under [a statute or] the Rules, the court ordinarily should rely on the [statute or] Rules rather than the inherent power." *Id.* at 50. However, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.*

## II.     FACTS AND PROCEDURAL HISTORY

Trex filed this action claiming that it is entitled to contribution and cost recovery under 42 U.S.C. § 9613 of the Comprehensive Environmental Response, Cost Recovery and Liability Act ("CERCLA") against more than 900 companies who are alleged to be "potentially responsible parties" for the release of hazardous substances at a Charlotte, North Carolina waste disposal facility (the "Trex Facility").  Trex obtained the property in June 2013 in a series of transactions in which its parent company (Environmental Liability Transfer, Inc. ("ELT")) was paid more than $12 million by Detrex, the former property owners, to assume the environmental liabilities at 20 different properties. Nearly all of the numerous defendants (who are auto body shops and other small businesses that generate used oil and other disposable wastes) have either settled by paying a modest settlement fee of several thousand dollars or defaulted. (*See* Doc. No. 1657, entering defaults against 288 defendants). However, the relatively small settlements have added up to a sizeable recovery. Trex has already received more than $8 million in payments, which may well substantially exceed its past and future costs to clean up the Trex Facility.

Specifically, there appears to be a significant question as to the cost to clean up the Trex Facility, with Trex claiming that it has spent $2.9 million, with a total estimated cost (including all potential contingent costs, however unlikely) exceeding $8 million. However, Trex has represented to North Carolina environmental officials, as recently as April 2022, that the total past and future response costs will be approximately $1.5 million. In the Court's hearing on earlier motions on October 13, 2022, Trex was unable to explain this significant discrepancy, other than to make the puzzling argument that the North Carolina amount was "conservative," which the Court expects would result in the state amount being higher rather than lower. Moreover, no effort was made to explain how the amount represented to the state could in any event be

4

approximately half of the amount that Trex has represented to this Court has already been spent in cleaning up the properties.

On October 17, 2022, the Court entered an Order, (Doc. No. 1754), denying Plaintiff's motion to dismiss the counterclaim of Defendant Powder Coating Services, Inc.'s ("Powder") for constructive fraud, (Doc. No. 1677) and Plaintiff's Motion to Dismiss Its Underlying Claims Against Powder Without Prejudice (Doc. No. 1725). Unlike most other defendants who answered, Powder had refused to settle and filed Counterclaims and Third Party Claims against the facility operator and/or parent of the operator who allegedly committed the environmental violations. (Doc. Nos. 1378, 1457). In the Order denying Plaintiff's motions, the Court told the parties that it intended to promptly enter an order scheduling a bench trial on the allocation of responsibility for the costs to clean up the waste at the Trex Facility and directed the parties to provide the Court with an estimate of how quickly they could be prepared for that trial by October 26, 2022.

However, on October 25, 2022, Plaintiff notified the Court that it had reached a settlement with Powder and Powder had reached a settlement on its Third Party claims. (Doc. No. 1757). Thereafter, Plaintiff gave notice of its voluntary dismissal with and without prejudice of numerous other defendants (Doc. Nos. 1759-1762, 1767-1768, 1770, 1771-1779); Powder stipulated to the dismissal of its claims (Doc. Nos. 1763-1764); and Plaintiff informed the Court that except for the pending motions to dismiss, the only remaining claim left in the case is Third-Party Defendant Detrex Corporation's cross-claims, which Plaintiff and Third-Party Defendant ELT are attempting to settle.

## III.  DISCUSSION

While the Court recognizes that, by its default, a defendant has conceded the factual allegations in the complaint, *see Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001), default does not constitute an admission of the plaintiff's conclusions of law, and is not to be "treated as an absolute confession by the defendant of ... liability and of the plaintiff's right to recover." *Id.* (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the court must "determine whether the well-pleaded allegations in [the movant's] complaint support the relief sought in [the] action." *Wilcox v. Transmodal Sols., LLC*, 473 F. Supp. 3d 574, 581–82 (E.D. Va. 2020). And, most significantly here, "a party who defaults does not admit the allegations in the complaint as to the amount of damages." *Wilcox v. Transmodal Sols., LLC*, 473 F. Supp. 3d 574, 581–82 (E.D. Va. 2020). Therefore, the Court must "make an independent determination regarding damages." *Id*. at 584.

In regard to damages which might be sought against the defaulting defendants, it is well established that a property's owner cannot use CERCLA to reap a profit or windfall. *See In re Kaiser Gypsum Co., Inc.*, 2020 WL 6737641 at *19 (W.D.N.C. Bnkr. Nov. 13, 2020); *see also Freidland v. TIC-The Industrial Co.*, 566 F.3d 1203, 1207 (10th Cir. 2009).  Therefore, if Plaintiff has already recovered all or more than the costs to remedy the alleged CERCLA violations then it is not entitled to any additional recovery and may not pursue any additional defendant – whether or not it has defaulted – for damages. So, allowing Plaintiff to dismiss the defaulting defendants without prejudice if Plaintiff has already been fully paid, would likely only lead to wasteful and unnecessary litigation in the future.

Further, even in the event Plaintiff does not pursue more litigation, it may well continue to threaten such litigation and seek settlements from the defaulted defendants. Specifically, the Court

6

remains concerned that Plaintiff's "business model" in pursuing the purchase of the Trex Facility reflects an improper effort to use CERCLA litigation (and its significant costs) to leverage settlements from small companies who sent waste to a licensed waste disposal facility in good faith into a profitable investment rather than pursuing bona fide claims on the merits. Indeed, when it became clear to Plaintiff that the Court intended to force a hearing on the allocation of responsibility that might expose the lack of merit in Plaintiff's claims, it scrambled to dismiss or settle its remaining claims like a Three-card Monte dealer pocketing his winnings and moving on to a new location when his game is discovered.

However, the Court will, consistent with the appropriate use of its discretion under Rule 41(a)(2) and its inherent powers not simply order the dismissal of the defaulting defendants and other defendants with prejudice. Instead, it will deny the motion, with leave for Plaintiff to refile the motion either 1) making an evidentiary showing establishing that it has not already recovered more in settlements and other payments than it is likely to cost to remedy the environmental damage to the Trex Facility to support a request for dismissals without prejudice or 2) seeking dismissals with prejudice, which will fully and finally end the litigation as to the defendants. Or, Plaintiff may, of course, decide not to pursue dismissals of these defendants and move forward with litigation on the merits.

7

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's Motion to Dismiss the Defaulting Defendants and Certain Non-Defaulting Defendants without Prejudice (Doc. No. 1769) is **DENIED**, with leave to refile the motion as described above.

**SO ORDERED ADJUDGED AND DECREED**.

Signed:   December 21, 2022

Kenneth D. Bell
United States District Judge

8